[No. H021112. Sixth Dist. Dec. 21, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
NOE CARRILLO DURAN, Defendant and Appellant.

## COUNSEL

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Eric D. Share and Catherine McBrien, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—After trial a jury convicted defendant Noe Carrillo Duran of conspiring to manufacture (count 1; Pen. Code, § 182) and manufacturing methamphetamine (count 2; Health & Saf. Code, § 11379.6)[1] in a quantity exceeding 25 gallons (§ 11379.8, subd. (a)(3)), possessing substances with the intent to manufacture methamphetamine (count 3; § 11383, subd. (c)(1)), possessing laboratory glassware for manufacturing purposes (count 6; § 11104.5), disposing of hazardous waste (count 4; § 11374.5, subd. (a)), and giving false information to a police officer (count 7; Pen. Code, § 148.9, subd. (a)). Count 5 was alleged against other codefendants, not Duran.

The trial court sentenced defendant to 15 years in prison, consisting of the midterm of five years on count 1, enhanced by 10 consecutive years due to the quantity of drugs. The court imposed a five-year concurrent midterm on count 2, with a 10-year quantity enhancement stayed, and a four-year concurrent midterm on count 4, with six-month concurrent sentences on the remaining misdemeanor counts. The court also imposed restitution fines, including $1,000 to the state Clandestine Drug Lab Cleanup Account (§ 11379.6), $750 for the local county cleanup (§ 11374.5), and $11,214.99 to reimburse the property owner for cleaning up (Pen. Code, § 1202.4, subd. (f)).

On appeal defendant challenges the sufficiency of the evidence. He also asserts error in the instructions and the verdict forms pertaining to the weight enhancements. He also asserts the trial court erred in admitting statements by

---

[1]Unspecified section references are to the Health and Safety Code.

his codefendant Juan Garcia. For the reasons stated below, we will reverse the judgment, finding no evidence to support the 10-year drug quantity enhancement that was imposed on count 1 pursuant to section 11379.8.

## TRIAL EVIDENCE

It was undisputed at trial that, on March 3, 1999, a narcotics task force discovered a methamphetamine laboratory in a detached garage on ranch property at 270 Highway 183 in Monterey County between Salinas and Castroville. Evidence of almost every step of methamphetamine manufacture was found on both sides of a partition in the garage: 132 empty bottles of pseudophedrine; blenders and a spice grinder for grinding the pseudophedrine pills into powder; empty cans of denatured alcohol for soaking the powder to separate the pseudophedrine from its binders; metal pots and a propane tank for cooking off the alcohol; large heating flasks and mantles for cooking together the powder with red phosphorous and iodine; coveralls stained with a characteristic red and orange; hoses and a fan to ventilate the poisonous fumes resulting from the cooking; used and unused latex gloves; a bucket of sodium hydroxide for changing the cooked product from an acid to a base; a can of freon, a solvent to which methamphetamine attaches; and a cylinder of hydrochloride gas for crystallizing the liquid. The result of this entire chemical process is a paste, which is put onto cut bed sheets and run through a mop bucket to squeeze out more liquid. Mop buckets and used and unused sheets were in the garage. Five-gallon plastic buckets contained a number of solutions, some containing ephedrine. Over 25 gallons of solution in different buckets contained methamphetamine. There was no finished methamphetamine.

The task force discovered that hazardous waste byproducts of methamphetamine manufacture had been disposed of in the backyard of the property.

Living in the residence on the property at the time were Marco and Elva Carranza and their infant child. In the Carranzas' bedroom were keys to padlocks for the rear and front of the garage. One hundred thirty-one grams of ephedrine were found in a baggie inside a sock in a shoe box in a spare bedroom of the residence. Also in that bedroom were men's clothing and a mattress on the floor. In a bucket under the kitchen sink was some methamphetamine solution.

Defendant's connection to the methamphetamine laboratory follows. The police surveilled the residence on March 2, 1999, the day before the laboratory was discovered, based on information revealed during an ongoing DEA

(Drug Enforcement Agency) wiretap of a cellular telephone with a Los Angeles number. When the police began surveillance at 7:00 p.m., a Dodge Ram pickup truck borrowed by codefendant Juan Garcia was parked at the residence along with a Honda car. The Honda car left the premises at 7:05 p.m. and returned around 10:20 p.m. A female took a small child out of the backseat.

A blue Chevy van arrived at 8:30 p.m. Two men inside either loaded or unloaded something from the garage area and left about five minutes later.

Around 9:30 p.m., one of the surveillance officers, Monterey County Sheriff's narcotics investigator Douglas Dahmen, mistakenly drove a camper truck down the driveway of the ranch property before leaving through a field. A wiretapped phone call at 9:28 p.m. asked someone to check out a camper truck parked near the ranch. The person said they would not be at the ranch until 10:00 p.m. Dahmen was warned and moved his truck.

Around 9:30 p.m., two men got into the Dodge pickup and drove off the ranch. The pickup lights only went on when the truck reached the highway. The truck returned around 9:45 p.m. and two men went into the residence.

Dahmen had the blue Chevy van stopped in Salinas by other officers around 10:00 p.m. The van was searched with a drug-sniffing dog. The two male occupants were field-interviewed and released within about 45 minutes. An intercepted telephone call from an occupant of the van warned the occupants of the house to leave immediately.

Around 11:00 p.m. three males left the ranch in the Dodge pickup. At 11:09 p.m. Monterey County Deputy Sheriff Larry Robinson stopped the pickup truck just outside Salinas. Jose Vasquez was driving. Defendant Noe Duran and codefendant Juan Garcia were also in the truck. Defendant identified himself as Felipe Sibrian.[2] Garcia identified himself to the police as Raul Delgadillo.

Monterey County Deputy Sheriff Ruben Garcia told the truck's occupants in Spanish that they were investigating the theft of chemicals. He made up this story because the methamphetamine investigation was continuing.

The occupants of the truck all agreed to accompany Garcia to the sheriff's department. In an interview at the sheriff's department, defendant continued to identify himself as Sibrian. He said he lived in San Jose but could not provide the address. He went to the ranch to drink beer. He had not been

---

[2]"Sibrian" and "Sidreon" appear interchangeably in the reporter's transcript.

there before. No one came or left while he was there. He had met Delgadillo two weeks earlier.

In an interview at the sheriff's department, Garcia continued to identify himself as Delgadillo. He said he lived in Salinas. He was from Mexico. He had borrowed the truck from someone who lived in Watsonville. He visited the ranch around 7:00 p.m. to drink beer and visit his cousin Javier Rodriguez. No one came or left while he was there. First he said he had not been to the ranch before, then he said he had been there a couple of months before. Defendant said he had known Vasquez and Sibrian for about 15 years.

When Garcia left the room after his police interview, Monterey County Deputy Sheriff Terry Kaiser found a wadded-up Big-K receipt on the table. The receipt was for coveralls, pants, sheets, and pillowcases. It was dated March 2, 1999. Hanging on a hook in the ranch garage was a Big-K bag containing new jeans and an unopened package of pillowcases.

Defendant's fingerprints were found on an empty can of denatured alcohol in a bag with other empty cans inside the garage. Defendant's fingerprints were also found on a battery in one of the three flashlights located in the garage.

At 12:09 p.m on March 3, 1999, "Eddie" called the wiretapped telephone number from jail. He said during the call that he went by the name "Juan Garcia."

Garcia did not testify at trial. Defendant testified as follows. He knew Garcia from Mexico, but they got better acquainted in California when defendant moved to Los Angeles before moving to San Jose. Defendant was in Salinas on March 2, 1999, at Garcia's invitation. They went to a rodeo to ride horses. A horseman invited them to the ranch, where they drank beer and had a barbecue. Defendant barbecued the meat in front of the house. He used a can of denatured alcohol provided by Carranza to start the coals. The fire flared up and almost burned defendant. Because it was dark, he asked Carranza for a flashlight. Carranza gave him a flashlight and batteries. Defendant left the alcohol can and the flashlight outside the garage. Defendant never went inside the house, instead urinating in the field.

When the police stopped them that night, defendant gave the name of Felipe Sibrian because he knew there was a Los Angeles warrant out for him for drunk driving. Defendant called Garcia Delgadillo because Garcia said there was also a warrant out for him.

### 1. *Sufficiency of the Evidence*

On appeal defendant contends that the evidence at trial was insufficient to support his convictions. In argument to the jury at trial defendant acknowledged, "we all know that there was a meth lab in operation," but he contended that there was no evidence connecting him to the lab.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 317-320 [99 S.Ct. 2781, 2788-2790, 61 L.Ed.2d 560].) The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618].)

The evidence connecting defendant to a conspiracy to manufacture methamphetamine includes the following. Defendant spent much of an evening on the premises where the manufacture of methamphetamine was in process. His fingerprints were found on the battery in a flashlight inside the detached garage which served as a methamphetamine laboratory. His fingerprints were also found on an empty can of denatured alcohol. Denatured alcohol is one of the substances used to transform pseudophedrine into methamphetamine. Defendant and two other men left the premises shortly after a call warning the occupants to get out. When defendant was apprehended by the police upon leaving the premises, he gave a false identity. Defendant lied to the police about whether anyone came to or left from the ranch while he was there. Defendant was apprehended with Juan Garcia. Defendant and Garcia admitted being acquainted, but they were inconsistent about how long they had known each other. Defendant and Garcia gave the same false identity for Garcia. Garcia possessed a receipt for items commonly employed in making methamphetamine, including protective clothing, sheets, and pillowcases. At trial defendant testified about a barbecue that was not seen by any of the surveilling officers.

*People v. Jenkins* (1979) 91 Cal.App.3d 579 [154 Cal.Rptr. 309] (*Jenkins*) concluded that fingerprints on several items in a phencyclidine (PCP) laboratory at the defendant's brother's house and the defendant's lies were insufficient without more to sustain the defendant's convictions of manufacturing PCP and possessing PCP precursors. The appellate court reasoned: "In sum: even if the fingerprint evidence is interpreted —as it evidently was—to place defendant in the garage at a time when the substances prohibited by section 11383, subdivision (b) of the Health and Safety Code were also present in that room, it furnishes no evidence of (1) possession, actual or constructive, (2) knowledge, or (3) intent to manufacture PCP. The People's brief bridges these formidable evidentiary gaps by stating simply that '[a]ppellant's involvement with the phencyclidine laboratory is also shown by his denial of even touching any of the paraphernalia and his continuing denial when confronted with the presence of his fingerprints. Finally, appellant used a false name over an extended period in custody, further showing his consciousness of guilt.' No authority is cited. In our opinion this argument puts entirely too heavy a burden on the evidence of defendant's falsehoods." (*Id.* at p. 585.)

We regard *Jenkins* as factually distinguishable. (Cf. *People v. Small* (1988) 205 Cal.App.3d 319, 325-326 [252 Cal.Rptr. 41].) In *Jenkins* there was no evidence other than fingerprints putting the defendant on the scene of the clandestine lab. In this case defendant was apprehended leaving the premises when the process of manufacturing methamphetamine was apparently interrupted. Defendant left with two others shortly after a warning call was made to the premises. In *Jenkins* the false identification and statements were made after the defendant was charged with involvement in the lab. In this case defendant began lying before he was charged with anything. Here defendant was also associated with another person, Garcia, who apparently was involved in the purchase of items commonly employed in making methamphetamine. Garcia also provided the police a false identity. Defendant gave an implausible explanation at trial for his fingerprints and his presence on the property.

■ *People v. Wayne* (1953) 41 Cal.2d 814 [264 P.2d 547], overruled on another ground in *People v. Bonelli* (1958) 50 Cal.2d 190, 197 [324 P.2d 1], discussed the evidentiary significance of a defendant's willfully false statements to law enforcement and in testimony. (*Wayne, supra*, 41 Cal.2d at p. 823.) The court stated: "The People rely upon *Boston* v. *Santosuosso* (1940), 307 Mass. 302, 349 [30 N.E.2d 278], and *Sheehan* v. *Goriansky* (1944), 317 Mass. 10, 16 [56 N.E.2d 883]. We agree with the following reasoning of the *Santosuosso* case: 'Of course, as has been pointed out many times, disbelief of evidence is not the equivalent of affirmative evidence to the contrary. . . . But where a material fact is established by evidence and

it is shown that a defendant's testimony as to that fact was wilfully untrue, this circumstance not only furnishes a ground for disbelieving other testimony of this defendant [citations], but also tends to show consciousness of guilt or liability on his part and has probative force in connection with other evidence on the issue of such guilt or liability. Such false testimony is in the nature of an admission from which with other evidence guilt or liability may be inferred. [Citations.]' " (*Ibid.*; cf. *People v. Toledo-Corro* (1959) 174 Cal.App.2d 812, 818-819 [345 P.2d 529].) "Here defendant did not simply deny his guilt; he ventured upon an explanation so unusual that the triers of fact could conclude that it was an intentional fabrication indicating consciousness of guilt and the absence of any true exculpatory explanation." (*Wayne, supra,* 41 Cal.2d at p. 823.)

■ We conclude that all the circumstances detailed above constitute substantial evidence supporting defendant's convictions.

## 2. *Codefendant's Statements*

■ On appeal defendant contends that the trial court erred in allowing into evidence against him the statements made by codefendant Garcia to the police upon apprehension. Defendant also contends that his trial counsel ineffectively made the wrong objection to these statements. These contentions arise from the following facts.

In the jury's absence, the court held an Evidence Code section 402 hearing to determine the admissibility of statements made by defendant and codefendant Garcia upon their apprehension. The prosecutor argued orally and in writing that the statements were admissible hearsay under Evidence Code section 1223, which states: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if:

"(a) The statement was made by the declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of that conspiracy;

"(b) The statement was made prior to or during the time that the party was participating in that conspiracy; and

"(c) The evidence is offered either after admission of evidence sufficient to sustain a finding of the facts specified in subdivisions (a) and (b) or, in the court's discretion as to the order of proof, subject to the admission of such evidence."

The prosecutor argued that the statements by codefendants were made "in furtherance of the subpoena [sic] in order to avoid detection of the conspiracy by law enforcement. They gave conflicting versions of how long they had known each other. At the point that the statements were made they did not know the conspiracy was being investigated. . . . [T]hey made statements to try to minimize their involvement . . . ." The prosecutor also argued the statements were made "to avoid discovery of the lab which they just left[,] to conceal the truth of the lab, to conceal their involvement of the lab and the existence of the lab itself[.] . . . [T]hese statements are in furtherance of the manufacture of methamphetamine. If they present themselves as innocent bystanders, happen to be there visiting persons[,] but their stories are in conflict with each other[,] then they're trying to promote the conspiracy and not be detected."

Garcia's counsel argued, "I don't see anything designed here to further the conspiracy I mean and because he is never asked anything directly about the conspiracy . . . . And I think in this case they are just admissions . . . ." Defendant's counsel adopted this argument. "I don't think there's anything showing a conspiracy." Defendant gave a false name in order to avoid a warrant out of Los Angeles.

The court concluded: "The Court is going to admit the statements. I find that they were made at a time when the conspiracy was ongoing. [¶] And secondly, that they were made in furtherance of the conspiracy in an attempt to minimize their involvement or suggest to the police officer that they were simply at that address for a social visit. . . . It is significant in my mind that both Mr. Garcia and Mr. Duran said that no one had come on to the property or left while they had been there and the evidence that we've heard thus far in the trial is contrary to that, was in fact traffic on or off the property during that time period."

The prosecutor argued to the jury as follows. When defendant lied about his identity to the police officers, it was part of the conspiracy. Codefendants gave "conflicting stories" "to try to evade detection of the conspiracy by law enforcement." Defendant's fingerprints on the denatured alcohol can and the flashlight batteries also connected him to the conspiracy to manufacture methamphetamine.

Defendant argued to the jury that he had just made a social visit to the ranch property. He admitted giving a false name to the police. He did so to avoid being arrested on a warrant from Los Angeles. Defendant's fingerprints resulted from his involvement in the barbecue.

The jury was instructed as follows. A deliberately misleading statement made before trial may indicate a consciousness of guilt, but does not prove guilt without more. (CALJIC No. 2.03.) Acts and declarations of coconspirators in furtherance of the conspiracy are binding on each other. (CALJIC No.

6.11.) Conspirators' acts and declarations are not binding when not in furtherance of the object of the conspiracy. (CALJIC No. 6.16.) An act or declaration tending to promote a conspiracy if not made by a conspirator is not binding on the conspirators. (CALJIC No. 6.17.) A conspirator's statements are evidence against a coconspirator only if a conspiracy exists and the statement was made during the conspiracy and in furtherance of the conspiracy. (CALJIC No. 6.24.)

Hearsay is an out-of-court statement offered as true. (Evid. Code, § 1200.) In this case, as defendant recognizes, the statements of both codefendants were not offered by the prosecution for their truth, but for their falsity. The prosecution intended to show that codefendants manifested a consciousness of guilt by lying to the police. Used for this purpose, the statements were admissible without qualifying as a hearsay exception. (*People v. Noguera* (1992) 4 Cal.4th 599, 624-625 [15 Cal.Rptr.2d 400, 842 P.2d 1160] [facially exculpatory statements by a coconspirator to the police]; *People v. Mendoza* (1987) 192 Cal.App.3d 667, 672-673 [238 Cal.Rptr. 1].)

Defendant argues that admission of these statements, whether for their falsity or truth, violated his constitutional right of confrontation. Defendant recognizes that his trial counsel failed to make a confrontation clause objection. Defendant proceeds to argue that his trial counsel was constitutionally ineffective in this regard. As we explain, the confrontation clause analysis is similar to that involved in applying Evidence Code section 1223.

*United States v. Inadi* (1986) 475 U.S. 387 [106 S.Ct. 1121, 89 L.Ed.2d 390] concluded that some out-of-court statements can be used against a defendant without a showing of the speaker's unavailability. Because a coconspirator's statements "are made while the conspiracy is in progress, such statements provide evidence of the conspiracy's context that cannot be replicated, even if the same declarant testifies to the same matters in court." (*Id.* at p. 395 [106 S.Ct. at p. 1126].) Such a statement "often will derive its significance from the circumstances in which it was made." (*Ibid.*) "[C]o-conspirator statements derive much of their value from the fact that they are made in a context very different from trial, and therefore are usually irreplaceable as substantive evidence." (*Id.* at pp. 395-396 [106 S.Ct. at p. 1126].) "The admission of co-conspirators' declarations into evidence thus actually furthers the 'Confrontation Clause's very mission' which is to 'advance "the accuracy of the truth-determining process in criminal trials." ' [Citation.]" (*Id.* at p. 396 [106 S.Ct. at p. 1126].) The court concluded that admission of an available coconspirator's statements does not violate the confrontation clause. (*Id.* at p. 400 [106 S.Ct. at p. 1128].)

*Bourjaily v. United States* (1987) 483 U.S. 171 [107 S.Ct. 2775, 97 L.Ed.2d 144] concluded that the confrontation clause does not require

independent indicia of reliability before admitting the out-of-court declarations of a coconspirator. The court concluded "that the co-conspirator exception to the hearsay rule is firmly enough rooted in our jurisprudence." (*Id.* at p. 183 [107 S.Ct. at p. 2782].) Prior cases "demonstrate that co-conspirators' statements, when made in the course and in furtherance of the conspiracy, have a long tradition of being outside the compass of the general hearsay exclusion." (*Ibid.*)

*People v. Williams* (1997) 16 Cal.4th 635 [66 Cal.Rptr.2d 573, 941 P.2d 752] relied on this precedent in the following passage. "Also without merit is defendant's contention that admission of the statements under Evidence Code section 1223 violated his constitutional right to confront witnesses against him. (U.S. Const., 6th, 14th Amends.; Cal. Const., art. I, § 15.) Both the United States Supreme Court and this court have in the past rejected such an argument. (*Bourjaily v. United States*[, *supra,*] 483 U.S. 171, 183 [107 S.Ct. 2775, 2782-2783] [hearsay exception for coconspirator statements is firmly rooted and thus a court need not independently inquire into the reliability of such statements]; *United States v. Inadi*[, *supra,*] 475 U.S. 387, 396-397 [106 S.Ct. 1121, 1127]; *People v. Hardy* [(1992)] 2 Cal.4th 86, 150-151 [5 Cal.Rptr.2d 796, 825 P.2d 781]; *People v. Brawley* (1969) 1 Cal.3d 277, 286-291 [82 Cal.Rptr. 161, 461 P.2d 361].)" (*Id.* at p. 682.)

*Williams* indicates that the same statements are often subject to both confrontation clause and Evidence Code section 1223 objections. Under the above cases, so long as codefendant Garcia's statements qualify as being made in the course and furtherance of a conspiracy, a confrontation clause objection would have been unavailing. Defendant contends that Garcia's statements were not made in furtherance of the conspiracy, because they were merely designed to avoid detection after he was arrested. Defendant relies on cases holding that, once the criminal objective of a conspiracy has been accomplished, statements made to avoid detection are not in furtherance of the conspiracy. (*People v. Saling* (1972) 7 Cal.3d 844, 853-854 [103 Cal.Rptr. 698, 500 P.2d 610]; *People v. Leach* (1975) 15 Cal.3d 419, 431 [124 Cal.Rptr. 752, 541 P.2d 296].) What defendant overlooks is that those cases apply when the objective of the conspiracy has been achieved. Here the methamphetamine laboratory had not yet yielded its final product. The trial court did not err in concluding that Garcia's statements to the police concealing his involvement and the existence of the lab were thus made in furtherance of the conspiracy to manufacture methamphetamine. (*People v. Noguera, supra,* 4 Cal.4th 599, 626.)

We conclude that codefendant Garcia's statements were properly admitted into evidence. A confrontation clause objection would not have been successful. Trial counsel was not ineffective in this regard.

### 3. *Quantity Enhancements*

Defendant's convictions of conspiring to manufacture methamphetamine (count 1) and manufacturing methamphetamine (count 2) were enhanced by 10-year sentences, imposed on count 1 and stayed on count 2, pursuant to section 11379.8, which states in pertinent part: "(a) Any person convicted of a violation of subdivision (a) of Section 11379.6, or of a conspiracy to violate subdivision (a) of Section 11379.6, with respect to any substance containing a controlled substance which is specified in paragraph (21), (22), or (23) of subdivision (d) of Section 11054, or in paragraph (1) or (2) of subdivision (d) or in paragraph (3) of subdivision (e) or in paragraph (2) of subdivision (f) of Section 11055 shall receive an additional term as follows: [¶] . . . [¶]

"(3) Where the substance exceeds 25 gallons of liquid by volume or 10 pounds of solid substance by weight, the person shall receive an additional term of 10 years. [¶] . . . [¶]

"(e) The conspiracy enhancements provided for in this section shall not be imposed unless the trier of fact finds that the defendant conspirator was substantially involved in the direction or supervision of, or in a significant portion of the financing of, the underlying offense."[3]

The jury in this case was instructed: "It is alleged in Counts 1 and 2 that at the time of the commission of the crime of which each defendant is accused, he conspired to manufacture or manufactured a substance containing methamphetamine which exceeded twenty five (25) gallons of liquid volume. [¶] If you find a defendant guilty of the crime charged in Count 1 or 2, you must determine whether this allegation is true. [¶] If you find a defendant guilty of the crime of conspiracy to commit the manufacture of the methamphetamine involving a substance containing methamphetamine which exceeds twenty five (25) gallons of liquid by volume, an essential element of this allegation is that the defendant was *substantially involved in the planning, direction, execution or financing of the conspiracy* and its objective."[4] (CALJIC No. 17.21, italics added.)

We observe that the given instruction does not track the wording of section 11379.8, subdivision (e). It allowed for imposition of the weight

---

[3]Subdivision (d) of section 11379.8 states: "Notwithstanding any other provision of law, the court may strike the additional punishment for the enhancements provided in this section if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment."

[4]We quote from the written instruction given to the jury, since the reporter's transcript has a garbled version of CALJIC No. 17.21.

enhancement if defendant was involved in the "planning" or "execution" of the conspiracy. These words do not appear in the subdivision, which refers only to "the direction or supervision of, or in a significant portion of the financing of" the underlying offense. We find the words "planning" and "execution" in different statutes describing different drug crimes. (§§ 11370.2, subd. (e),[5] 11370.4, subds. (a), (b).[6])

---

[5]Section 11370.2 states in part: "(a) Any person convicted of a violation of, or of a conspiracy to violate, Section 11351, 11351.5, or 11352 shall receive, in addition to any other punishment authorized by law, including Section 667.5 of the Penal Code, a full, separate, and consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate, Section 11351, 11351.5, 11352, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, or 11383, whether or not the prior conviction resulted in a term of imprisonment.

"(b) Any person convicted of a violation of, or of a conspiracy to violate, Section 11378.5, 11379.5, 11379.6, 11380.5, or 11383 shall receive, in addition to any other punishment authorized by law, including Section 667.5 of the Penal Code, a full, separate, and consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate, Section 11351, 11351.5, 11352, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, or 11383, whether or not the prior conviction resulted in a term of imprisonment.

"(c) Any person convicted of a violation of, or of a conspiracy to violate, Section 11378 or 11379 with respect to any substance containing a controlled substance specified in paragraph (1) or (2) of subdivision (d) of Section 11055 shall receive, in addition to any other punishment authorized by law, including Section 667.5 of the Penal Code, a full, separate, and consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate, Section 11351, 11351.5, 11352, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, or 11383, whether or not the prior conviction resulted in a term of imprisonment.

"(d) The enhancements provided for in this section shall be pleaded and proven as provided by law.

"(e) The conspiracy enhancements provided for in this section shall not be imposed unless the trier of fact finds that the defendant conspirator was substantially involved in the planning, direction, execution, or financing of the underlying offense."

[6]Section 11370.4 states in part: "(a) Any person convicted of a violation of, or of a conspiracy to violate, Section 11351, 11351.5, or 11352 with respect to a substance containing heroin, cocaine base as specified in paragraph (1) of subdivision (f) of Section 11054, or cocaine as specified in paragraph (6) of subdivision (b) of Section 11055 shall receive an additional term as follows:

"(1) Where the substance exceeds one kilogram by weight, the person shall receive an additional term of three years.

"(2) Where the substance exceeds four kilograms by weight, the person shall receive an additional term of five years.

"(3) Where the substance exceeds 10 kilograms by weight, the person shall receive an additional term of 10 years.

"(4) Where the substance exceeds 20 kilograms by weight, the person shall receive an additional term of 15 years.

"(5) Where the substance exceeds 40 kilograms by weight, the person shall receive an additional term of 20 years.

"(6) Where the substance exceeds 80 kilograms by weight, the person shall receive an additional term of 25 years.

■ We have requested and received letter briefs from both parties concerning whether using these additional words constituted instructional error. The Attorney General argues essentially that the instruction actually corrected a legislative error in drafting section 11379.8.

We review the history of these related statutes. Sections 11370.2, 11370.4, and 11379.8 were enacted by the same legislation effective in 1986. (Stats. 1985, ch. 1398, §§ 2, 3, 4, pp. 4948-4949.) As originally enacted, they contained no mention of conspiracy. Section 1 preceded all these statutes with the statement: "It is the intent of the Legislature in enacting Sections 3 [(§ 11370.4)] and 4 [(§ 11379.8)] of this act to punish more severely those persons who are in the regular business of trafficking in, or production of, narcotics and those persons who deal in large quantities of narcotics as opposed to individuals who have a less serious, occasional, or relatively minor role." (Stats. 1985, ch. 1398, § 1, p. 4948.)

Conspiracy language was added to sections 11370.2 and 11370.4 in 1989. (Stats. 1989, ch. 1326, §§ 1.5, 2.5, pp. 5325-5328.) Subdivision (e) was added to section 11370.2 stating: "The conspiracy enhancements provided for in this section shall not be imposed unless the trier of fact finds that the defendant conspirator was substantially involved in the planning, direction, execution, or financing of the underlying offense." Identical language was added to section 11370.4, subdivisions (a) and (b). The following italicized words were among those added to subdivision (a) of section 11370.2. "Any person convicted of a violation of, *or of a conspiracy to violate,* Section 11351, 11351.5, *or* 11352 shall receive, in addition to any other punishment authorized by law, including Section 667.5 of the Penal Code, a full, separate, and consecutive three-year term for each prior felony conviction of,

"The conspiracy enhancements provided for in this subdivision shall not be imposed unless the trier of fact finds that the defendant conspirator was substantially involved in the planning, direction, execution, or financing of the underlying offense.

"(b) Any person convicted of a violation of, or of conspiracy to violate, Section 11378, 11378.5, 11379, or 11379.5 with respect to a substance containing methamphetamine, amphetamine, phencyclidine (PCP) and its analogs shall receive an additional term as follows:

"(1) Where the substance exceeds one kilogram by weight, or 30 liters by liquid volume, the person shall receive an additional term of three years.

"(2) Where the substance exceeds four kilograms by weight, or 100 liters by liquid volume, the person shall receive an additional term of five years.

"(3) Where the substance exceeds 10 kilograms by weight, or 200 liters by liquid volume, the person shall receive an additional term of 10 years.

"(4) Where the substance exceeds 20 kilograms by weight, or 400 liters by liquid volume, the person shall receive an additional term of 15 years.

"In computing the quantities involved in this subdivision, plant or vegetable material seized shall not be included.

"The conspiracy enhancements provided for in this subdivision shall not be imposed unless the trier of fact finds that the defendant conspirator was substantially involved in the planning, direction, execution, or financing of the underlying offense."

*or for each prior felony conviction of conspiracy to violate,* Section 11351, 11351.5, 11352, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, or 11383, whether or not the prior conviction resulted in a term of imprisonment." (*Ibid.*) Similar language was added to other parts of sections 11370.2 and 11370.4.

Conspiracy language was not added to section 11379.8 until 1992, when the Legislature added the current subdivision (e), which we repeat. "The conspiracy enhancements provided for in this section shall not be imposed unless the trier of fact finds that the defendant conspirator was substantially involved in the direction or supervision of, or in a significant portion of the financing of, the underlying offense." (Stats. 1992, ch. 578, § 2, pp. 2131-2132.) The following italicized language was also added to subdivision (a). "Any person convicted of a violation of subdivision (a) of Section 11379.6, *or of a conspiracy to violate subdivision (a) of Section 11379.6,* . . . shall receive an additional term as follows." (*Ibid.*)

Thus, the 1992 amendment of section 11379.8 adding subdivision (e) used different language than the 1989 amendments of sections 11370.2 and 11370.4. The "planning" and "execution" of the underlying offense were not included in section 11379.8 as bases for imposition of the conspiracy enhancements, and "supervision" was included.

The Attorney General argues that in order to carry out the legislative intent announced in 1985 of targeting those in the drug trafficking business, we should read these omitted words into the 1992 amendment of section 11379.8 to avoid an absurd result. ■ " ' "[I]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.] Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." [Citation.]' " (*People v. Ledesma* (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310].)

■ Code of Civil Procedure section 1858 states our function: "In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ." (Cf. *People v. Salcedo* (1994) 30 Cal.App.4th 209, 219 [35 Cal.Rptr.2d 539] (*Salcedo*).) *People v. Garcia* (1999) 21 Cal.4th 1 [87 Cal.Rptr.2d 114, 980 P.2d 829] stated, "The Attorney General was unable to cite, nor has our research disclosed, any case in which this court has cured an asserted drafting error by grafting an entire substantive clause onto a statute." (*Id.* at p. 15.) ■ *Peñasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180

[283 Cal.Rptr. 135, 812 P.2d 154] reiterated the principle: " ' "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." ' " (*Id.* at pp. 1188-1189.) ▮ We presume a different legislative intent, not an oversight, from the fact that words used in sections 11370.2 and 11370.4 are missing from section 11379.8. Thus, the "conspiracy enhancements" described in subdivision (e) of section 11379.8 do not apply to a defendant unless he or she "was substantially involved in the direction or supervision of, or in a significant portion of the financing of, the underlying offense." Evidence of planning or execution alone is not enough. If the Legislature meant to include the words "planning" and "execution" in section 11379.8, the Legislature can correct this drafting error. (*People v. Garcia, supra,* 21 Cal.4th 1, 15.)

The next question, on which we also obtained supplemental briefing, is what are the "conspiracy enhancements provided for in this section"? *Salcedo, supra,* 30 Cal.App.4th 209 has already considered this issue arising under section 11370.4. In that case two defendants were convicted of both conspiring to sell or transport cocaine and underlying offenses of selling or transporting cocaine. Weight enhancements were found true for the underlying offenses and were not attached to the conspiracy. (*Salcedo,* at p. 214.) The defendants argued on appeal that the enhancements applied to the underlying offenses only if they were substantially involved in the offenses and not merely the conspiracy. (*Id.* at pp. 214-214.)

▮ *Salcedo* noted that conspiracy plays a dual role in the criminal law. It is both a crime and a theory of criminal liability. (*Salcedo, supra,* 30 Cal.App.4th at pp. 215-216.) ▮ The Legislature added the conspiracy language to section 11370.4 in order to expand the reach of the enhancements, but only where the defendant was convicted of conspiracy and the defendant was substantially involved in the conspiracy. (*Salcedo,* at pp. 216-217.) The court reasoned that, prior to the amendment, a defendant could have been convicted of the underlying offense on a conspiracy theory. (*Id.* at pp. 215-216, 219.) *Salcedo* concluded, "The statute does not require substantial involvement where a defendant is convicted not of conspiracy but of a substantive offense (enumerated in the statute) based on a theory of joint conspiracy liability." (*Id.* at p. 216.) "[T]he only conspiracy enhancement identified in the statute is one that applies to the substantive offense of conspiracy." (*Ibid.*)

Thus, under *Salcedo,* the Legislature has added "conspiracy enhancements" to the quantity enhancements originally proscribed by section 11379.8. The quantity enhancements apply to a conviction for violating

section 11379.6, subdivision (a), whether or not the conviction is based on a conspiracy theory and whether or not the defendant was substantially involved in the conspiracy. The "conspiracy enhancements" apply only to convicted conspirators who were "substantially involved in the direction or supervision of, or in a significant portion of the financing of, the underlying offense."

Defendant argues that this interpretation of the statute contradicts the legislative intent and violates due process. Defendant asserts that the legislative intent was to apply the quantity enhancements to only those conspirators who were substantially involved in certain aspects of the underlying offense. Defendant suggests that the amendment of section 11379.8 was designed to restrict application of the quantity enhancements in those cases where the prosecution pursues only a conspiracy theory.

We believe that the conspiracy language was added to section 11379.8 and related statutes in order to expand, not restrict, the reach of the quantity enhancements. Accordingly, we agree with the reasoning and conclusion of *Salcedo*. The "conspiracy enhancements" apply only to conspiracy convictions, not to convictions of the underlying offenses on a conspiracy theory.

We apply our above interpretation of section 11379.8[7] to the facts of this case. First, it is apparent that the trial court erred in instructing the jury that the conspiracy enhancement applied to the conspiracy charge (count 1) if it found that defendant was involved in the execution or planning of the underlying offense. The Attorney General concedes there was no evidence that defendant "was substantially involved in the direction or supervision of, or in a significant portion of the financing of, the underlying offense." (§ 11379.8, subd. (e).) The prosecutor did not argue otherwise.

No objection was made to this instruction, but Penal Code section 1259 provides in part, "The appellate court may . . . review any instruction given, . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."

Prejudice is manifest. Defendant's conspiracy sentence was enhanced by 10 years on count 1 due to an erroneous instruction. The enhancement on

---

[7]We repeat, the statute states in pertinent part: "(a) Any person convicted of a violation of subdivision (a) of Section 11379.6, or of a conspiracy to violate subdivision (a) of Section 11379.6, with respect to any substance containing a controlled substance which is specified in paragraph (21), (22), or (23) of subdivision (d) of Section 11054, or in paragraph (1) or (2) of subdivision (d) or in paragraph (3) of subdivision (e) or in paragraph (2) of subdivision (f) of Section 11055 shall receive an additional term as follows: [¶] . . . [¶]

"(3) Where the substance exceeds 25 gallons of liquid by volume or 10 pounds of solid substance by weight, the person shall receive an additional term of 10 years. [¶] . . . [¶]

"(e) The conspiracy enhancements provided for in this section shall not be imposed unless the trier of fact finds that the defendant conspirator was substantially involved in the direction or supervision of, or in a significant portion of the financing of, the underlying offense."

count 1 must be reversed. In view of this conclusion, we do not reach defendant's argument that the verdict form for count 1 was deficient in that it did not require an express finding of substantial involvement. (Compare *People v. Chevalier* (1997) 60 Cal.App.4th 507, 514 [70 Cal.Rptr.2d 482], with *People v. Garcia* (1992) 3 Cal.App.4th 582, 586 [4 Cal.Rptr.2d 539].)

As stated above, the substantial involvement requirement does not apply to a conviction of the underlying offense, whether or not based on a conspiracy theory. Thus, the quantity enhancement can apply to the conviction of manufacturing methamphetamine (count 2; § 11379.6) without evidence of or instruction about defendant's substantial involvement. Contrary to defendant's argument, the trial court did not err either in failing to instruct the jury to find substantial involvement before applying the enhancement to count 2 or in failing to require an express finding of substantial involvement on the verdict form. CALJIC No. 17.21 adequately described what the jury had to find to impose the quantity enhancement on this charge of manufacturing methamphetamine, namely that defendant manufactured the specified quantity. There was sufficient evidence that defendant was involved in manufacturing methamphetamine.

### DISPOSITION

The judgment is reversed only as to the true finding and sentence on the section 11379.8 allegation on count 1. There is insufficient evidence to sustain the section 11379.8 enhancement on count 1. The case is remanded to the trial court. ▆ ▆ ▆ The trial court shall resentence defendant and shall decide whether to impose the previously stayed enhancement on count 2 (§ 11379.6, manufacturing methamphetamine), unless the prosecutor elects to retry the enhancement allegation on count 1.[8]

Wunderlich, J., and Mihara, J., concurred.

A petition for a rehearing was denied January 14, 2002, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 13, 2002.

---

[8]The parties have submitted letter briefs, which we requested at oral argument, concerning whether double jeopardy bars retrial of this conspiracy enhancement. It is established that a prior conviction enhancement can be retried after appellate reversal due to insufficiency of the evidence. (*People v. Monge* (1997) 16 Cal.4th 826, 843, 845, 847 [66 Cal.Rptr.2d 853, 941 P.2d 1121], affd. by *Monge v. California* (1998) 524 U.S. 721, 734 [118 S.Ct. 2246, 2253, 141 L.Ed.2d 615].) On further consideration, we believe it would be premature for us to decide whether this principle extends to this conspiracy enhancement after *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] unless and until the prosecution chooses to retry the conspiracy enhancement. (*People v. Zermeno* (1999) 21 Cal.4th 927, 933-934, fn. 3 [89 Cal.Rptr.2d 863, 986 P.2d 196].)