Filed 6/4/13  P. v. White CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>JOSHUA RAY WHITE,<br><br>   Defendant and Appellant. | F064350<br><br>(Super. Ct. No. MCR041800)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County.  Mitchell C. Rigby, Judge.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Wiseman, Acting P.J., Franson, J. and Peña, J.

Defendant and appellant Joshua Ray White contends there was insufficient evidence to support his conviction for residential burglary and vandalism. He also contends imposition of concurrent sentences on the two offenses violated Penal Code section 654. We conclude the evidence was ample and that his sentencing contention is moot. We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

A jury found defendant guilty as charged, in a third amended information, of residential burglary (count 1, Pen. Code, § 459) and vandalism, a misdemeanor (count 2, Pen. Code, § 594, subd. (a)). In bifurcated proceedings, the court found true three enhancement allegations pursuant to Penal Code section 667.5, subdivision (b). At a subsequent hearing, the court sentenced defendant to an operative term of nine years in prison on count 1 and the enhancement allegations, together with a concurrent sentence of 264 days on the misdemeanor, with credit for 264 days of presentence custody.

Viewed most favorably to the jury's verdict (*People v. Avila* (2009) 46 Cal.4th 680, 701), the evidence at trial showed the following:

Gabriel Andrade parked in front of his friend's house on Colusa Avenue in Chowchilla at about 4:30 a.m. on August 24, 2011. His headlights illuminated a person dressed in black, wearing a black hat, emerge from beside the house next door, cross in front of the neighboring house, and disappear into the darkness "walking fast." Andrade napped until he saw a light come on in his friend's house about 5:30 or 6:00 a.m. He told the friend what he had seen and they looked at the neighboring house. They saw the front window had been broken out; the friend called the police.

Detective Charles Scott responded to the burglary call. He discovered the house at 212 Colusa Avenue had been broken into. An officer called the occupant of the house, Jerald Phelps, to inform him of the break-in. Phelps worked the night shift at Merced County Juvenile Hall. He returned home in response to the telephone call and, together with the investigating officers, determined that someone had cut the padlock off a double

2.

gate that led from an alley into his backyard; someone had cut the lock off a door to his garage and entered his home through the garage; and that televisions, electronics (including an iPod "surround sound" speaker) and other items were missing from the home.

Chowchilla Police Officer Rogers headed toward 212 Colusa about 6:30 a.m. in response to information from the police dispatcher. On the way, he stopped to question a person known to him (Bankston) at 6:24 a.m. and, while doing so, he saw defendant, whom he knew, ride by on a bicycle, dressed in black clothing and a black hat. After Rogers arrived at the crime scene a few minutes later, he told Officer Riviere that he had recently seen defendant nearby, dressed in black. Riviere knew that defendant was often at his uncle's house, about a block from the crime scene, and Rogers and Riviere went to the uncle's house. While Riviere was watching the uncle's house, defendant came out, wearing dark pants and a white undershirt. At about 6:47 a.m., Riviere approached defendant and asked where the rest of his clothes were. The occupants of the house would not let the officer enter but, at defendant's instruction, handed out defendant's clothing, which consisted of a black short-sleeved shirt, a grey long-sleeved sweater, and a dark baseball-style hat. Defendant was arrested and taken to a police holding cell by 7:01 a.m. At the time of arrest, he was wearing sneakers; the size, tread pattern, and wear pattern were later determined by Detective Scott to match a shoeprint in the front driveway of 212 Colusa and another print in the garage of the home.

Between August 24 and August 27, 2011, Chowchilla police stopped a vehicle driven by defendant's brother; Jamie Edwards was a passenger in the vehicle. Police found property stolen in the Phelps burglary in the trunk of the vehicle. On August 27, Jamie Edwards visited defendant at the Madera County jail. Their conversation was recorded, in accordance with posted jail regulations, and played for the jury. Defendant told Edwards he could beat the charge against him if Bankston "comes in and says the right things." Edwards replied, "He ain't gonna do that." Defendant told Edwards to tell

3.

Bankston "I'm gonna beat his face in …. [¶] … [¶] … if he don't appear to court and do the right thing." While other portions of the transcript were somewhat ambiguous, the jury reasonably could interpret defendant's statements as asking whether the police "got everything" during the earlier search of the brother's car, stating that defendant wanted "my TV" that was at his mother's house, and stating that the "[c]hances I took and the things I did" were because he was afraid Edwards would leave him if he had no money. Edwards told defendant that his brother had sold "your surround sound" before the police were able to recover it and that his mother "ain't giving … up" defendant's television.

After listening to the recording of the conversation between defendant and Edwards, Detective Scott went to the home of defendant's mother, where he found a 42-inch television stolen in the burglary. The mother told Scott she thought the television "probably" was stolen, but that it had been brought to her by a minor we will refer to as G.K.[1]

Defendant testified that he was on parole at the time of the burglary and had a curfew from 8:00 p.m. to 8:00 a.m. On the morning of August 24, 2011, he left home sometime after 8:00 a.m., dressed in black pants, shirt, and hat, wearing socks and flip-flops. He rode his bicycle to Edwards's house, but she was not yet awake, so he rode to his uncle's house. There, Bankston gave him shoes that Bankston had gotten from a dumpster at "the Hospice." It was those black sneakers defendant was wearing when he was arrested. Defendant also offered explanations for various portions of his jail conversation with Edwards: He was going to beat Bankston not over testimony in this case but because Bankston had stolen tools from defendant; that the things defendant did to get money for Edwards involved performing in sex tapes, not committing burglary;

---

**1** Defendant's mother testified that G.K. had tapped on her window about 4:00 a.m. the morning of the burglary and sold her the television at that time for $200.

and that the "[c]hances" he took involved his family disowning him because of his relationship with Edwards. Defendant denied committing the burglary.

## DISCUSSION

Defendant attacks the sufficiency of the evidence on several fronts. Considered in light of the applicable standard of review, none of these attacks has merit.

"'"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 ….) In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] 'This standard applies whether direct or circumstantial evidence is involved.' [Citation.]" (*People v. Avila, supra,* 46 Cal.4th at p. 701.) "'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' [Citation.]" (*People v. Lee* (2011) 51 Cal.4th 620, 632.)

In three instances, defendant's attacks on the evidence merely address the weight or persuasive force of the evidence, not its legal sufficiency. For example, defendant concedes Andrade's description of the clothing on the man seen in front of the premises at 4:00 a.m. matched the clothing defendant was wearing in the immediate area about 6:30 a.m. While he also concedes this testimony supports an inference of defendant's

5.

guilt, he contends the fact that Andrade said the man was wearing tan work boots "tended to exonerate" defendant. A witness's testimony does not have to be correct in every detail to be deemed credible by the jury (see CALCRIM Nos. 105 and 226, with which jury was instructed here) and we do not revisit that credibility determination on appeal. (*People v. Lee, supra,* 51 Cal.4th at p. 632.) Here, of course, the inculpatory value of Andrade's testimony was reinforced by Officer Rogers's observation of defendant's clothing a short time later, defendant's acknowledgment that he was wearing dark clothing and a dark hat on the morning in question, and his inculpatory statements concerning the disposition of "his" property in the recorded conversation with Edwards. Similarly, while the shoes defendant was wearing when arrested were, as his brief contends, a "common, national[] shoe brand," and while the investigating officers did not inspect the soles of the shoes of other persons at the crime scene, the inculpatory fact remains that a footprint matching defendant's was found in the driveway and inside the garage at the crime scene within a few hours of the crime. The jury was entitled to evaluate this evidence in light of defendant's wholly preposterous explanation that he had obtained these shoes less than two minutes before his arrest from Bankston, at some time after 8:30 a.m., when other credible evidence showed that defendant was detained wearing the shoes at 6:47 a.m. and was in a jail cell by 7:01 a.m. In summary, defendant was entitled to—and did—attack the probative force of the prosecution's evidence in his argument to the jury but, the jury having found the prosecution's evidence credible, such attacks fail as a matter of law on appeal. (See *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1167-1168.)

Defendant next contends there is insufficient evidence that defendant actually entered the premises. This argument wholly ignores the fact that defendant's shoeprint was found inside the garage, which was attached to the house and through which the burglars entered. Thus, defendant states: "The footprints in this case were made in areas where it was common for people to walk." While one of the footprints was, indeed, in

the front driveway of the house, the second print that matched defendant's shoe was inside a garage from which a padlock had been cut in order to obtain entry. Further, unlike cases upon which defendant relies such as *Mikes v. Borg* (9th Cir. 1991) 947 F.2d 353, 357, a case involving fingerprint evidence, there was ample evidence placing defendant at the scene of the crime on the morning of the burglary—primarily Andrade's description of the person seen at the scene and Rogers's observation of the similarly clothed defendant in the neighborhood two hours later, at a time defendant falsely claimed to have been home in bed on the other side of town.

The final aspect of defendant's attack on the sufficiency of the evidence is a claim that the evidence does not show defendant had a felonious intent upon entry into the premises, as is required for the crime of burglary. While defendant acknowledges that such intent can be—and commonly is—established through circumstantial evidence, his argument ignores well-established case law that permits a jury to infer consciousness of guilt from a defendant's patently false attempts to explain incriminatory circumstances. (*People v. Wayne* (1953) 41 Cal.2d 814, 823; *People v. Duran* (2001) 94 Cal.App.4th 923, 932; *People v. Amador* (1970) 8 Cal.App.3d 788, 791-792.) And while defendant acknowledges the line of authority permitting an inference of criminal intent from the possession of recently stolen property (see *People v. Abilez* (2007) 41 Cal.4th 472, 508), he contends that inference is permissible only as to those persons from whom the police seize the property. In this case, defendant was not in physical possession of the recently stolen property because he was already in jail, but his assertion of control over the property in his conversation with Edwards (and her description of a portion of the stolen property as defendant's) permits the same inference by the finder of fact.

Viewing the evidence as a whole, a reasonable jury could readily conclude beyond a reasonable doubt that defendant committed the burglary.

Defendant's remaining contention is that his concurrent misdemeanor sentence for vandalism violated Penal Code section 654, which prohibits, as relevant here, multiple

7.

punishments for an indivisible series of criminal acts taken for a single criminal purpose. (See *People v. Latimer* (1993) 5 Cal.4th 1203, 1215.) In the present case, defendant served no sentence for the misdemeanor after sentencing, since the court gave him credit for time served. Accordingly, even if defendant is correct that Penal Code section 654 would require a stay of sentence on that offense, there is no effective relief that can be afforded on appeal. Accordingly, the issue is moot. (See *People v. Travis* (2006) 139 Cal.App.4th 1271, 1280.) Defendant contends the unstayed—but fully served— misdemeanor sentence might somehow affect a future decision to grant defendant parole; as a result, he contends, the issue is not moot. Penal Code section 654 affects only punishment, not the underlying conviction for all crimes arising from the course of conduct. Accordingly, the vandalism conviction, irrespective of any sentence imposed or stayed, could still be considered for parole purposes, and defendant has not suggested any manner in which the unstayed sentence could have parole consequences. This issue is moot.

## DISPOSITION

The judgment is affirmed.