[No. S068840. Nov. 4, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JAVIER FRANCISCO ZERMENO, Defendant and Appellant.

## COUNSEL

Marcia C. Levine, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Brad D. Levenson, Sanjay T. Kumar, Robert F. Katz and Peggie Bradford, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KENNARD, J.**—When a defendant commits an aggravated assault and a fellow gang member aids and abets that assault by preventing anyone from stepping in, does their conduct amount to "two or more offenses" committed "on separate occasions, or by two or more persons" so as to establish a "pattern of criminal gang activity" under Penal Code section 186.22,[1] thus subjecting the defendant to increased punishment? Unlike the Court of Appeal, we conclude that under applicable law, the combined activity of

---

[1]Further undesignated statutory references are to the Penal Code.

defendant and his companion, who facilitated defendant's commission of the assault, was a single offense.

## I

The prosecution charged Javier Francisco Zermeno with assaulting Enrique Garcia with a deadly weapon. (§ 245, subd. (a)(1).) It further alleged that the crime was committed to benefit a criminal street gang (§ 186.22, subd. (b)(1)) and that defendant had previously served a prison term for a serious felony (§§ 667, subds. (a), (d) & (e), 1170.12, subds. (b) & (c)); both allegations, if found true, would increase the punishment for the charged offense. At trial, the prosecution presented this evidence:

On the evening of July 19, 1996, Enrique Garcia drove from Buellton to Santa Barbara to road test a rebuilt engine he· had just put in his car. With him were two friends, Sergio Castro and Martin Lopez. Two other friends followed in a car driven by Efrain Padilla. None of the five was a member of any gang.

After visiting some friends, the group stopped near Santa Barbara's De La Guerra Plaza and talked about heading back home. At that point, defendant and Ramon Tadeo got out of a van parked in the middle of De La Guerra Street. Carrying an empty beer bottle, defendant walked up to Garcia and asked, "Where are you from?" Tadeo asked the same question of Padilla, who replied, "I'm not from no where." Seconds later, defendant hit Garcia in the head with the bottle, which then fell from his hand and shattered. Thereafter, defendant swung at Garcia with his fists. Garcia's friends, Sergio Castro and Martin Lopez, tried to intervene, but defendant's companion, Tadeo, blocked their way, saying "Just let them fight one-on-one. Let them fight." When a police car came on the scene, defendant fled. A short while later, the officers found him hiding in some bushes.

Sergeant Edward Szeyller of the Santa Barbara Police Department, a 19-year police veteran in charge of the department's gang suppression and enforcement team, testified for the prosecution. He was familiar not only with the criminal street gangs in Santa Barbara but also with those in surrounding communities. He identified defendant and Tadeo as members of the Carpas gang from nearby Carpenteria. Szeyller estimated that the gang had 20 to 25 actual members and that an additional 40 to 50 individuals were associated with the gang.

Sergeant Szeyller explained that typically on weekend nights members of many gangs would congregate near State Street, Santa Barbara's main

thoroughfare, which serves as the dividing line between the turfs of two rival gangs, the West Side and the East Side gangs. He mentioned that in a recent fight between the East Side and Carpas gangs, a member of the Carpas gang was fatally stabbed and defendant's face was slashed. In Szeyller's opinion, defendant attacked Garcia in retaliation for that incident. Seeing Garcia in East Side gang territory, defendant likely mistook him for a member of that gang. In preventing the victim's friends, Castro and Lopez, from coming to his aid, Tadeo was "protect[ing] the back of the person who is doing the assault." This, Sergeant Szeyller explained, was "classic" behavior in gang incidents.

The jury convicted defendant of assault with a deadly weapon, and it found true the allegations that defendant had committed the offense for the benefit of a criminal street gang and had served a prior prison term for a serious felony. The trial court sentenced defendant to a total prison term of eleven years: four years for the assault, two years for the gang enhancement, and five years for the prior serious felony. The Court of Appeal affirmed the judgment. It agreed with the trial court that defendant's assault and fellow gang member Tadeo's aiding and abetting the assault satisfied the criminal street gang statute's requirement of "two or more" predicate offenses to establish the statutorily required "pattern of criminal gang activity." (§ 186.22, subd. (e).)

## II

For the third time in four years we address an issue involving section 186.22, a provision of the Street Terrorism Enforcement and Prevention Act, also known as the STEP Act, which the Legislature enacted in 1988. Subdivision (b)(1) of this provision imposes additional punishment for felony offenses committed "for the benefit of, at the direction of, or in association with *any criminal street gang*." (Italics added.)

The act defines "criminal street gang" as any ongoing association that consists of three or more persons, that has a common name or common identifying sign or symbol, that has as one of its "primary activities" the commission of certain specified criminal offenses, and that engages through its members in a *"pattern of criminal gang activity."* (§ 186.22, subd. (f), italics added.) A gang engages in a "pattern of criminal gang activity" when its members participate in "two or more" statutorily enumerated criminal offenses (the so-called "predicate offenses") that are committed within a certain time frame and "on separate occasions, or by two or more persons." (*Id.*, subd. (e).)

In *People* v. *Gardeley* (1996) 14 Cal.4th 605, 610 [59 Cal.Rptr.2d 356, 927 P.2d 713] (*Gardeley*), we for the first time considered the criteria the

prosecution must satisfy to establish a "pattern of criminal gang activity" under the STEP Act. We held there that the prosecution had established the statutorily required "two or more" predicate offenses "on separate occasions, or by two or more persons" by proof of the defendant's commission of (1) the charged offense of aggravated assault (one of the statutorily enumerated offenses), and (2) an earlier incident in which a fellow gang member had shot at an occupied dwelling (also an enumerated offense). (*Gardeley, supra,* at p. 625.)

Then in *People* v. *Loeun* (1997) 17 Cal.4th 1, 10 [69 Cal.Rptr.2d 776, 947 P.2d 1313] (*Loeun*), we held that proof of the statutorily required "two or more" offenses committed "on separate occasions, or by two or more persons" was satisfied by evidence of (1) the charged crime of assault with a deadly weapon, and (2) a separate assault with a deadly weapon on the same victim committed contemporaneously with the charged offense by the defendant's fellow gang member. We explained: "In *Gardeley*, not only were the predicate offenses committed on separate occasions, but they were also perpetrated by two different persons. The pertinent statutory language does not require proof, however, that the two or more predicate offenses must have been committed both on separate occasions and by different persons. Under the statute, the pattern of criminal gang activity can be established by proof of 'two or more' predicate offenses committed 'on separate occasions, *or* by two or more persons.' (Former § 186.22, subd. (e), italics added.) . . . Therefore, when the prosecution chooses to establish the requisite 'pattern' by evidence of 'two or more' predicate offenses committed on a single occasion by 'two or more persons,' it can, as here, rely on evidence of the defendant's commission of the charged offense and the contemporaneous commission of a second predicate offense by a fellow gang member." (*Loeun, supra,* at pp. 9-10.)

Here, relying on *Loeun, supra,* 17 Cal.4th 1, the Court of Appeal held that defendant's assault on Garcia in conjunction with Tadeo's contemporaneous conduct of aiding and abetting defendant's assault by preventing Garcia's two friends from coming to his aid established the two predicate offenses that are statutorily required to prove a "pattern of criminal gang activity." We disagree, concluding the combined activity of defendant and Tadeo was, under applicable law, but one offense. Our analysis follows.

While defendant was assaulting Garcia with a deadly weapon (the beer bottle), Tadeo positioned himself between the two groups of men (defendant and victim Garcia on one side and Garcia's two friends, Castro and Lopez, on the other), and he told the victim's friends, "Just let them fight one-on-one. Let them fight." In doing so, gang expert Sergeant Szeyller testified,

Tadeo was "protect[ing] the back" of defendant, a fellow gang member. By assisting defendant, the actual perpetrator of the assault, "with the intent that the actual perpetrator's purpose be facilitated thereby," Tadeo can be held accountable for defendant's wrongful act. (*People* v. *Croy* (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392]; accord, *People* v. *Sanchez* (1995) 12 Cal.4th 1, 33 [47 Cal.Rptr.2d 843, 906 P.2d 1129].) As an aider and abettor, Tadeo's criminal liability is "vicarious." (*People* v. *Croy, supra,* 41 Cal.3d at p. 12, fn. 5; *People* v. *Sanchez, supra,* 12 Cal.4th at p. 33.)

Under section 971, Tadeo, as an aider and abettor, was subject to be "prosecuted, tried and punished as [a] principal[]" because he was a "person[] concerned in the commission of *a* crime." (Italics added.) Section 31 defines principals as "[a]ll persons concerned in the commission of *a* crime . . . whether they directly commit the act constituting *the offense*, or aid and abet in its commission . . . ." (Italics added.) Notably, both sections 971 and 31 refer to the commission of "*a*" crime, and section 31 also uses the singular term "*the offense*." (Italics added.) Thus, both statutes describe aider and abettor liability as involving a single offense, the one committed by the perpetrator. (See also § 1111 [defining an "accomplice" as someone "liable to prosecution for *the identical offense* charged against the defendant" (italics added)].)

In light of these statutes, we conclude that when defendant hit Garcia with the beer bottle and Tadeo prevented Garcia's friends from coming to his aid, this was just one offense. Accordingly, this conduct did not satisfy the statutory requirement of "two or more" predicate offenses to establish the "pattern of criminal gang activity" under the STEP Act.[2] (§ 186.22, subd. (e).)

This case is distinguishable from *Loeun, supra,* 17 Cal.4th 1, in which the defendant committed an assault with a deadly weapon (a baseball bat) contemporaneously with a fellow gang member's separate assault with a

---

[2]The record does not reflect whether Tadeo was ever charged with, or convicted of, aiding and abetting defendant's assault on Garcia. To establish the predicate offenses that comprise the requisite "pattern of criminal gang activity," the STEP Act does not require a conviction thereof. Here, the prosecution presented the aiding and abetting theory to prove one of the "two or more" predicate offenses under section 186.22, subdivision (e). Consistent with the prosecution's theory, the trial court gave the jury a modified version of CALJIC No. 3.01: "A person aids and abets the commission of a crime when he [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime." The jury returned a "true" finding on the STEP Act allegation. Thus, presumably the jury decided that Tadeo had aided and abetted defendant's assault on Garcia.

deadly weapon (a tire iron) on the same victim. We concluded in *Loeun* that these actions met the statutory requirement of "two or more offenses" necessary to establish a "pattern of criminal gang activity." (§ 186.22, subd. (e).) Unlike the situation here, *Loeun* involved two separate assaults by two different assailants, each one subject to criminal liability as a direct perpetrator, not merely as an aider and abettor.

The Attorney General, in arguing that the combined conduct of defendant and Tadeo did meet the STEP Act's requirement of two predicate offenses, relies on section 15, which states: "A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of [certain] punishments," one of which is "imprisonment." Although section 15 may be helpful in distinguishing criminal from noncriminal behavior, it is of no assistance in determining whether the conduct here constituted one or two criminal offenses under the STEP Act. As we have explained, on the facts of this case Tadeo could incur criminal liability only as an aider and abettor of defendant's assault of Garcia with the beer bottle. Under this theory of liability, a perpetrator and an aider and abettor together commit but one offense. (§§ 31, 971.)

The Court of Appeal, in holding that defendant's assault on Garcia and Tadeo's aiding and abetting that assault were two separate offenses under the STEP Act, considered it significant that "each actor committed a criminal offense for which he could be separately charged, tried and convicted." We agree with the quoted language. But as we pointed out earlier, here the criminal offense for "each actor" (the perpetrator and the aider and abettor) was the same one—defendant's assault of Garcia. Indeed, the Court of Appeal acknowledged as much in describing its holding that the requisite gang pattern could be shown "by proof of the currently charged offense and by proof that another aided and abetted *that offense*." (Italics added.)

Because we conclude that the prosecution proved only one predicate offense, defendant's assault with a deadly weapon on Enrique Garcia, it failed to establish the requisite "pattern of criminal gang activity," which must be proven by "two or more" predicate offenses committed "on separate occasions, or by two or more persons." (§ 186.22, subd. (e).) Accordingly, the evidence was insufficient to support the two-year increase of defendant's punishment under the STEP Act.[3]

---

[3]Defendant argues that a setting aside for insufficiency of evidence of the two-year increase in punishment under the STEP Act would, under principles of double jeopardy, preclude retrial of that issue. (See *Burks* v. *United States* (1978) 437 U.S. 1, 11 [98 S.Ct. 2141, 2147,

DISPOSITION

We reverse the judgment of the Court of Appeal to the extent it upheld the two-year term added to defendant's state prison sentence for violation of the STEP Act, and we remand the matter for proceedings consistent with this opinion.

George, C. J., Mosk, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

---

57 L.Ed.2d 1]; see generally, *People* v. *Williams* (1998) 16 Cal.4th 635, 690, fn. 22 [66 Cal.Rptr.2d 573, 941 P.2d 752].) The Attorney General counters that this case is governed by *Monge* v. *California* (1998) 524 U.S. 721, 734 [118 S.Ct. 2246, 2253, 141 L.Ed.2d 615], in which the United States Supreme Court held that "the Double Jeopardy Clause does not preclude retrial on a prior conviction allegation in the noncapital sentencing context." Defendant, however, points to a more recent decision by the high court, *Jones* v. *United States* (1999) 526 U.S. 227, 243, footnote 6 [119 S.Ct. 1215, 1224, 143 L.Ed.2d 311], in which the court distinguished prior conviction allegations (as in *Monge*) from other allegations that increase the maximum penalty for a crime while requiring some finding of fact "other than prior conviction"; the latter, *Jones* holds, are subject to the protections of the federal Constitution's Fifth Amendment, which defendant contends includes the double jeopardy clause.

We do not decide the double jeopardy question defendant raises here. Unless and until the prosecution chooses to retry the STEP Act allegation, the issue is premature. (See *People* v. *Swain* (1996) 12 Cal.4th 593, 610 [49 Cal.Rptr.2d 390, 909 P.2d 994].)