CORRIGAN, J.,
Concurring and Dissenting.—I concur in the judgment and write separately to clarify the scope of our decision. The issue we address is a narrow one. It arises only when the prosecution seeks to prove a street gang enhancement by showing the defendant committed a felony to benefit a broader umbrella gang, but seeks to prove the requisite pattern of criminal gang activity with evidence of felonies committed by members of subsets to the umbrella gang. Our decision is limited to that factual scenario.
To prove the street gang enhancement, the prosecution must prove that defendant committed the underlying crime “for the benefit of, at the direction of, or in association with any criminal street gang . . . .” (Pen. Code,[1] § 186.22, subd. (b).) It must also prove the following:
*92 1. The defendant acted with the specific intent to promote, further, or assist criminal conduct by members of an identifiable group. As the majority notes, the group must be one that its members recognize as an ongoing entity with which they associate. (See maj. opn., ante, at pp. 82-83.)
2. That group must be of a specific kind in order to satisfy the STEP Act’s definition of a criminal street gang. The group may be formal or informal, but it must be an ongoing association of three or more people who share a common name or identifying symbol. (§ 186.22, subd. (1).) The majority is correct that the mere sharing of a common name or symbol is insufficient, standing alone, to satisfy the statute. In addition, one of the primary activities of the group must be the commission of certain enumerated crimes and group members must engage in a pattern of criminal gang activity.
3. This pattern of criminal gang activity must be proven by evidence that a gang member or members committed two offenses as set out in the statute.[2] These acts are described as “predicate offenses.” (People v. Tran (2011) 51 Cal.4th 1040, 1044 [126 Cal.Rptr.3d 65, 253 P.3d 239].)
This case involves a specific kind of criminal street gang: an umbrella group allegedly operating through smaller subsets that may be independent from each other, but which associate and identify with the broader umbrella group. As the majority and the Chief Justice note, there is abundant evidence in this record that an entity known as the Norteños exists, operates in the Sacramento area, shares common symbols and the name “Norteño,” and operates through smaller associated subsets. Likewise, there is substantial evidence that defendant associated with the larger Norteño gang, and intended to promote, further, or assist criminal conduct by its members.
To prove the required predicate offenses, the prosecution’s gang expert, John Sample, testified about crimes committed by specifically named groups: Varrio Gardenland Norteños and Varrio Centro Norteños. Sample made the conclusory statement that Varrio Gardenland and Varrio Centro were subsets *93 of the umbrella group of Norteños. But he did not provide any testimony from which the jury could conclude that these smaller groups actually considered themselves part of the broader Norteño group, other than the sharing of the name and symbols. While the use of a common name or symbol is necessary, something more is required.
The evidence fell short only because Sample failed to testify the Varrio Centro Norteños and the Varrio Gardenland Norteños were actually associated with the broader Norteño umbrella group in that they consider themselves members of, not only their own subset, but of the larger group of Norteños as well. It is that final link alone that is missing here, and its absence undermines the verdict.[3]
The majority concludes that “the STEP Act requires the prosecution to introduce evidence showing an associational or organizational connection that unites members of a putative criminal street gang” (maj. opn., ante, at p. 67), and gives a series of examples {id. at pp. 77-81). The examples given include evidence of “shared bylaws or organizational arrangements” {id. at p. 77), the existence of collaborative activity {id. at p. 78), or self-identification as part of a larger group {id. at pp. 78-79).
Contrary to the majority’s suggestion, self-identification is not merely one way to prove the requisite connection. It is the organizing principle that unites the majority’s myriad examples. The principle is derived directly from the STEP Act’s definition of a criminal street gang as an “ongoing organization, association, or group of three or more persons, whether formal or informal . . . having a common name or common identifying sign or symbol . . . .” (§ 186.22, subd. (1).) A gang is defined internally by its members, who then show themselves to be a group by using a common name or symbol that identifies their group and distinguishes it from others. The same principle applies when a larger umbrella group operates through subsets. A subset recognizes itself as both the subset and as part of the umbrella group. It demonstrates that self-identification through its conduct.
The majority asserts that “there are some limits on the boundaries of an identity-based theory” and it would be insufficient “merely that a local subset has represented itself as an affiliate of what the prosecution asserts is a larger *94 organization.” (Maj. opn., ante, at p. 79.) The majority further suggests subsets should ‘“mutually acknowledge one another as part of that same organization . . . .” (Ibid.) The majority concludes as to self-identification: ‘“Evidence of self-identification must refer to the particular activities of subsets, and must permit the jury to reasonably conclude that the various subsets are associated with each other because of their shared connection with a certain group.” (Id. at p. 80.)
I agree that the mere subjective intent of particular subset members to identify with an umbrella group is insufficient to show the relevant connection. The connection must be an objective one based on the subset’s conduct. That is why the STEP Act requires proof of predicate offenses. However, I disagree with any suggestion that different subsets must acknowledge each other as part of a larger group, or that the umbrella group and a subset must somehow ‘“mutually acknowledge” each other. A particular Norteño subset may be part of the larger umbrella group, yet lack a relationship with, or knowledge of, any other particular subset.
Detective Sample’s description of the Norteño gang’s structure was uncon-troverted below and reflected a highly informal group.[4] Its informality does not exclude it from the reach of the statute. It would be remarkable indeed to expect a gang like that described here to operate under a set of ‘“bylaws” or be hierarchically linked. The statute embraces criminal street gangs that differ dramatically from Murder Incorporated. Some sophisticated criminal enterprises may operate in a highly structured way, with an organizational chart and designated ‘“shot callers.” But the STEP Act does not require that any given gang do so, so long as the statutory elements are met. There need not be proof that different subsets work together, or have any particular affection for each other. This case provides no occasion for us to speculate about what other kinds of evidence might suffice in other circumstances, with gangs that operate differently.
When the proffered predicate offenses are allegedly committed by members of a subset, there must be sufficient evidence of a fink between that subset and the umbrella group. The fink must show the subset self-identities as associating with the umbrella group, and demonstrates that association through its conduct. This link can, of course, be established in a variety of *95 ways, including statements by members or by inferences drawn from their behavior. Because the evidence of such self-identification was lacking here, I concur with the majority’s holding that the Court of Appeal’s judgment must be reversed.

 All statutory references will be to the Penal Code.

 The statute defines a pattern of criminal gang activity as “the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more [enumerated] offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons ...."’(§ 186.22, subd. (e).) “This language allows the prosecution the choice of proving the requisite ‘pattern of criminal gang activity’ by evidence of ‘two or more’ predicate offenses committed ‘on separate occasions’ or by evidence of such offenses committed ‘by two or more persons’ on the same occasion.” (People v. Loeun (1997) 17 Cal.4th 1, 10 [69 Cal.Rptr.2d 776, 947 P.2d 1313]; but see People v. Zermeno (1999) 21 Cal.4th 927, 930-933 [89 Cal.Rptr.2d 863, 986 P.2d 196].)

 This lack of proof is somewhat understandable. The defense did not contest that the Norteños exist as an umbrella group that qualifies as a criminal street gang and operates through neighborhood subsets. Indeed, the defense theory was that defendant, as a Norteño member, was threatened by a Sureño member and acted in self-defense. Evidence of the link may have been readily available but not explicitly inquired about because the law was unclear in this regard.

 As discussed. Sample’s testimony was insufficient, not because it failed to adequately describe the relationship between the umbrella Norteño gang and its subsets generally, but because he failed to specifically link the particular subsets alleged to have committed the predicate offenses with the larger gang. Contrary to the majority’s characterization, nothing in this opinion suggests reviewing courts should “speculate to fill evidentiary gaps . . . .” (Maj. opn., ante, at p. 82.) Of course they should not do so.