Filed 1/13/21  In re J.V. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> J.V., <br><br> Defendant and Appellant. | F080301 <br><br> (Super. Ct. No. JW139174-02) <br><br> **OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Lorna H. Brumfield, Judge.

Holly Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and John W. Powell, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Smith, Acting P.J., Snauffer, J. and DeSantos, J.

The juvenile court found that minor J.V. had committed one count of attempted carjacking (Pen. Code, §§ 215, subd. (a), 664;[1] count 2), one count of violating the terms of his probation by committing the offenses alleged in the petition (Welf. & Inst. Code, § 777, subd. (a)(2); count 4), and one count of assault with a deadly weapon (§ 245, subd. (a)(2); count 5).[2] As to count 2, the court found the offense involved the use of a firearm by a principal. (§ 12022.53, subds. (d), (e)(1).) As to counts 2 and 5, the court found true a gang enhancement. (§ 186.22, subd. (b)(1).)

On appeal, minor contends the evidence was insufficient to establish that he acted with the intent to promote, further, or assist a gang, and that the gang was engaged in a pattern of criminal activity, both of which are required to support the gang enhancements to counts 2 and 5.

We find sufficient evidence to support the juvenile court's findings. Accordingly, we affirm.

## BACKGROUND

On May 10, 2019, at approximately 6:00 p.m., Sergio A.[3] was in his parked car at a mobile home park in the City of Arvin when he was approached by two young men, later identified as minor and Jose Hernandez.[4] Sergio did not know either individual, but had seen them around on the street. Hernandez got into Sergio's front passenger seat and asked for a ride to the nearby area of Lamont. Hernandez stated he wanted to pick up a

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     The court determined the allegations that minor had committed attempted murder (§§ 187, subd. (a), 664; count 1), and active participation in a criminal street gang (§ 186.22, subd. (a); count 3), were not true.

[3]     Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

[4]     Hernandez is not a party to this appeal.

2.

check and would give Sergio gas money in exchange for the ride. Sergio agreed, and Hernandez told minor to get in. Minor got into the back seat on the passenger side.

As they were driving toward Lamont, Hernandez stated that minor needed to use the restroom and asked Sergio to pull over. Sergio pulled to the side of the road in a pistachio grove. Hernandez then produced a black revolver, pointed it at Sergio, and said, "Hey, I'm gonna have to take your car because we have a mission." Hernandez told Sergio that he was "Arvina." Sergio stated he would take them to Lamont as a favor but that stealing his car was not right. Sergio told Hernandez that he had a baby and pointed to his baby's seat in the back. Hernandez told minor to get Sergio out of the car. Sergio exited the car, as did minor, who then walked to the driver's side of the vehicle and began hitting Sergio. Sergio and minor hit one another as Hernandez also got out of the car. Sergio tried to flag down passing cars for help as he and minor scuffled. Hernandez fired a shot in the air. Sergio and minor ended up in the pistachio grove. Hernandez pointed the gun at them and told minor to get out of the way so that he could shoot Sergio.

As they fought, Sergio grabbed onto minor's T-shirt. Minor tried to get away. Suddenly, minor's shirt came off and Sergio was no longer able to hold onto him. Sergio ran. Hernandez shot Sergio in the lower back while he was bent over, causing the shot to come out his upper left chest, a few inches away from his arm, near his collarbone. Hernandez and minor then both ran off into the pistachio grove. Minor did not say anything during the entire incident.

Meanwhile, Carlos Z. was driving with his girlfriend in his pickup truck when he saw someone outside of a white car, trying to wave down cars. Another individual also was outside of the car and someone else was in the passenger seat. Carlos passed the car but turned around and stopped approximately 75 yards from the car. By the time he turned around, all three individuals were out of the car and heading toward the orchards. Two of the individuals were tugging at the person who had been trying to flag down help. Carlos thought they were fighting and he started honking to try to break it up. However,

3.

one of the individuals pushed the man who had been waving down help, and the other shot him. Carlos started to leave. Sergio saw Carlos's truck and started running toward it. Sergio got into the back seat of the truck. Carlos drove down the road approximately a half mile until he encountered a rancher and told the rancher what had happened.

Sergio was transported by ambulance to the hospital. He lost consciousness on the way to the hospital and woke up the next morning after having undergone surgery. He remained in the hospital for two more days.

On May 13, 2019, Arvin Police Officer Archuleta contacted minor, Hernandez, and another individual, Juan B. Minor was known to Archuleta, and Archuleta noted that, when they made eye contact, minor turned his body and kept his hands down in front of him instead of swinging them normally as he walked. It appeared to Archuleta that minor was trying to conceal something in his waistband. The three individuals walked into the front yard of a residence, which Archuleta later determined was Juan's residence, and where Hernandez also lived with Juan's family. As Archuleta spoke with Hernandez and Juan, minor walked to the east corner of the house and Archuleta lost sight of him for five to 10 seconds. Minor then walked back with his arms swinging normally. Once additional officers arrived to assist, Archuleta went to the side of the house where minor had been and located a .38 caliber Smith & Wesson revolver wrapped in a gray T-shirt and stuffed into a flowerpot. Minor and Hernandez were arrested.

Kern County Sheriff's Department deputies learned that Arvin Police had recovered a revolver from minor and Hernandez. Deputy Nelson created a photographic lineup that included photographs of both Hernandez and minor.

On May 14, 2019, Sergio identified Hernandez and minor in photographic lineups. Sergio also was shown a photograph of the gun Archuleta recovered, and identified it as the one used in the shooting. A blue T-shirt was photographed at the scene. At trial, Sergio identified the shirt as minor's and stated it was located in the spot where he fought with minor.

4.

Hernandez was arrested on May 15, 2019, at his home in Arvin. As he was being moved from one vehicle to another for transport, Nelson observed Hernandez make a hand gesture that Nelson recognized as a gang sign used by Arvin Poor Side gang members to identify themselves. Inside the bedroom in Hernandez's residence, Deputy Morales found a hat that said, "Poor Side X3," which Morales understood to refer to a gang in Arvin. Morales also noticed that Hernandez had a tattoo of three dots, which was common in the Arvina Poor Side gang.

## II.    *Gang Expert Testimony*

Kern County Sheriff's Deputy Fernandez testified as a gang expert. He had frequent contact with gang members in the areas of Arvin, Lamont, and Weedpatch. He was familiar with the Arvina Poor Side gang, which is a subset of the Arvina 13 gang. He explained that the Arvina Poor Side gang has an alliance with the Weedpatch criminal street gang, and they both fall under the umbrella of southern Hispanic gangs. The primary rivals of the Arvina Poor Side gang are the Lamont 13 criminal street gang and any northern gangs. Common signs and symbols for the Arvina Poor Side gang include "AVN," "APS," "Poor Side," "X3," "13," "AVN 13," or "A." The gang primarily uses a dark blue color.

Fernandez had investigated crimes by Arvina Poor Side members, and testified that the gang focuses on crimes such as illegal weapons possession, firearms possession, attempted homicide, and carjacking. The gang uses minors to facilitate crimes, such as by breaking bathroom windows to open doors to facilitate burglary, or having them hold weapons or drugs.

One way to join the gang is to be "crimed in." In this process, a potential gang member will accompany an active gang member to commit crimes, in order to prove they are worthy of joining the gang. In Fernandez's experience, nonmembers would facilitate crimes in order to build their reputation in the gang and establish that they are worthy of being considered a gang member.

Fernandez discussed two specific criminal cases he had investigated involving Arvina Poor Side members. The first case, Kern County Sheriff's Department case No. 15-00026035 (case No. 15-00026035), involved an October 2, 2015 incident in which a deputy performed a traffic stop on a vehicle that was traveling at a high rate of speed within the territory of the Weedpatch gang. Fernandez responded to the scene to assist. When he arrived, Fernandez recognized two of the people in the vehicle as Arvina Poor Side gang members he had contacted in the past. One of these two individuals also had a large "A" tattoo on the front of his neck. The car was searched and the deputies located two loaded, operable firearms in the glove box. Fernandez testified that gang members carry weapons for offensive and defensive purposes, and to assist in other illegal activities. In relation to this incident, both of the individuals Fernandez was familiar with, as well as one he was not, pled to being a gang member in possession of a firearm. (§ 25850, subd. (c)(3).) Another individual in the vehicle pled to being an accessory. (§ 32.) Fernandez opined that all four individuals were active members of the Arvina Poor Side gang at the time of the offense, and that the offense was committed to benefit the gang due to long-standing rivalry between Arvin and Lamont gangs.

Fernandez also was involved in the investigation of Kern County Sheriff's Department case No. 2016-30175 (case No. 2016-30175). That case arose out of a November 4, 2016 traffic stop in an area called Little Arvin, a mile north of the traditional boundaries of the Arvina Poor Side gang, and outside the territory of any other gang. Fernandez assisted with the stop. There were four subjects in the vehicle, and Fernandez was not previously familiar with any of them. A loaded, operable firearm was located inside an ice chest inside the vehicle, near where an individual named Francisco Banos was seated. Banos had a large "P" tattoo on his center neck, which Fernandez testified stood for Poor Side, and a large "A" under his left ear. Banos admitted to being an Arvina Poor Side member. He ultimately pled to being an accessory to a felony in relation to this incident. (§ 32.) Two of the other individuals denied gang membership

6.

and had no visible indicia of gang membership. One of them pled to being a felon in possession of a firearm. (§ 29800.) The other pled to being an accessory to a felony.[5] (§ 32.) Fernandez opined that this was a gang crime, that all of the defendants were active Arvina Poor Side members at the time of the offenses, and that the offenses were committed in furtherance of the gang. This opinion was based on Fernandez's review of the police reports and his interview of the subjects.

With regard to the instant offense, Fernandez testified that the attempted carjacking and shooting were "within the same realm of crime" typical of Arvina Poor Side members, based on his experience responding to calls in Arvin. The prosecutor also presented Fernandez with questions based on hypothetical scenarios. In one hypothetical, the prosecutor asked:

> "[I]f a 19 year old and a 14 year old asked for a ride; the minor says, 'Hey, I need to stop to go to the bathroom,' and during that time, the 19 year old pulls out a gun and demands the vehicle, is that activity that you would find common with the Arvina Poor Side gang members?"

In the second hypothetical, the prosecutor asked:

> "[I]f the victim fights for the vehicle, says, 'Don't take my car,' and the 19 year old tells the 14 year old to 'get him,' to 'pull him out of the car,' and after the 14 year old pulls him out of the car, the 19 year old shoots him, is that activity that you would find common with Arvina Poor Side gang members?"

Fernandez responded affirmatively to both hypotheticals. The prosecutor also asked whether those hypotheticals were consistent with the way Arvina Poor Side gang members may use or indoctrinate a minor as a member of the gang. Fernandez again responded affirmatively.

The prosecutor continued:

---

**5**     The fourth individual in the vehicle was not discussed in detail during trial testimony.

"Hypothetically, if during an attempted -- during a carjacking or somebody trying to do a carjacking, if the person trying to do the carjacking were -- were to say, 'I'm from Arvina. I need your car. I'm on a mission,' would that be consistent with having committed that crime in furtherance of the Arvina Poor Side gang?"

The prosecutor also asked:

"Hypothetically, if the same 14 and 19 year old that I've asked you the hypothetical questions about were arrested a few days later with a gun that was identified as being used in the carjacking, would that be in furtherance of the Arvina Poor Side gang?"

Fernandez responded affirmatively to both hypotheticals. As to the latter, Fernandez explained that weapons are hard to get, and it therefore would be common for gang members to retain weapons, which conduct would benefit the gang.

Fernandez further testified that the acts described in the prosecutor's hypotheticals were committed for the benefit, in furtherance of, and association with the Arvina Poor Side gang:

"The acts described in the hypothetical, I formed the opinion that they were performed at the direction of and to the benefit of the Arvina and in association with the Arvina Poor Side criminal street gang. Based on my training and experience as a gang investigator, gang members commit violent crimes to enhance their reputation within the gang and their overall reputation within the community as being violent and something to be feared. When a gang's reputation in the community is violence and intimidation, the community members, victims of crimes, witnesses to crimes are less likely to want to report the crimes to law enforcement. That, in turn, allows the gang to continue their illegal activities without interference from law enforcement."

Fernandez testified that Hernandez's denial of being an Arvina Poor Side member did not change his opinion that Hernandez was a member of that gang.

II.    *Defense Case*

Minor's parents testified that they saw minor throughout the day on May 10, 2019. The last time they saw him was sometime between 3:00 p.m. and 4:00 p.m., at their home in Arvin.

8.

## DISCUSSION

Minor argues the gang enhancements should be reversed because the evidence was insufficient to show that minor intended to promote, further, or assist in criminal conduct by the gang, or that the members of the gang engaged in a pattern of gang activity.

### I. Applicable Law

"The test for evaluating a sufficiency of evidence claim is deferential: 'whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We must 'view the evidence in the light most favorable to the People' and 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] We must also 'accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*People v. Flores* (2020) 9 Cal.5th 371, 411.)

The gang enhancement statute, section 186.22, subdivision (b)(1) provides for additional punishment when a defendant has been convicted of a felony "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (*Ibid.*) Section 186.22, subdivision (b)(1) has thus been described as having two "prongs," both of which must be established by the evidence. (*People v. Albillar* (2010) 51 Cal.4th 47, 59 (*Albillar*).) The so-called "gang-related" prong requires proof that the underlying felony was committed "for the benefit of, at the direction of, or in association with any criminal street gang." (§ 186.22, subd. (b)(1); see *Albillar*, at pp. 59-60, 67.) The "specific intent" prong "requires that a defendant commit the gang-related felony 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.' " (*Albillar*, at p. 64; see § 186.22, subd. (b)(1).)

Additionally, "[t]he prosecution's evidence must permit the jury to infer that the 'gang' that the defendant sought to benefit, and the 'gang' that the prosecution proves to exist, are one and the same." (*People v. Prunty* (2015) 62 Cal.4th 59, 75.) Section

9.

186.22, subdivision (f) requires "that the gang must consist of 'three or more persons' who have as one of their 'primary activities the commission of' certain enumerated criminal acts; who share 'a common name or common identifying sign or symbol'; and 'whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.' " (*Prunty*, at p. 75.)

## II. Substantial Evidence of Minor's Intent

In minor's briefing, the headings of his argument section contend that the evidence is insufficient to establish minor had the specific intent to promote, further, or assist in criminal conduct by gang members. However, the body of his argument focuses on whether the evidence was sufficient to establish that minor specifically intended to benefit the gang. With this argument, minor has conflated the two prongs of section 186.22, subdivision (b)(1). Indeed, specific intent to benefit a gang is not an element of section 186.22, subdivision (b)(1). (*Albillar*, *supra*, 51 Cal.4th at p. 67.) It therefore is unclear which prong of the gang enhancement minor intends to challenge.[6] Regardless, as we explain, substantial evidence supports both prongs.

### A. Gang-Related Prong

Not every crime committed by gang members is committed for the benefit of, at the direction of, or in association with the gang. (*Albillar*, *supra*, 51 Cal.4th at p. 60.) The requirement that the offense be "committed for the benefit of, at the direction of, or in association with any criminal street gang," ensures that the enhancement applies only to offenses that are "gang-related." (*Albillar*, at pp. 66-68.)

---

**6** This defect also forfeits both issues, because minor fails to include a separate heading challenging the gang-related prong of the statute (see Cal. Rules of Court, rule 8.204(a)(1)(B); *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201 [failure to comply with rule requiring each argument be presented under a separate heading forfeits the argument]), and fails to develop any argument challenging the specific intent prong of the statute (see *People v. Barnett* (1998) 17 Cal.4th 1044, 1182 [the failure to support claim with adequate argument forfeits the claim as not properly raised]).

Here, the evidence establishes that minor committed the offense in association with Hernandez. Hernandez announced during the offense that he was "Arvina," made a gang sign during his arrest, had a hat with a gang emblem in his house, and had a tattoo with three dots, common to the Arvina Poor Side gang. The testimony of the expert witness and the deputies assigned to the case all identify this conduct as indicative of Hernandez's membership in the Arvina Poor Side gang. The evidence leaves little doubt that minor committed the offense in association with a known gang member. (See *People v. Leon* (2016) 243 Cal.App.4th 1003, 1021 [a trier of fact can rationally infer a crime was committed " 'in association' " with a criminal street gang, within the meaning of § 186.22, subd. (b)(1), if the accused committed the offense in concert with a gang member or members].) Hernandez additionally proclaimed he was Arvina before directing minor to get the victim out of the car. Minor then proceeded to hit the victim, and scuffled with him until Hernandez directed minor to get out of the way. A rational trier of fact could rely on these facts to conclude that minor committed the offenses at the direction of the gang.

The evidence also is sufficient to establish minor's commission of the offense benefitted the gang. Fernandez testified that a 19 year old telling a 14 year old to get the victim out of the car would be consistent with the way Arvina Poor Side gang members use minors and indoctrinate minors into the gang. Additionally, Fernandez testified that hypothetical facts presented by the prosecutor, which closely mirrored those of this case, would enhance the gang's reputation for violence and intimidation within the community, thus deterring victims and witnesses from cooperating with law enforcement. Although, as minor points out, there were minor variances between the hypotheticals and the actual facts, these were not so significant as to necessarily undermine Fernandez's opinion testimony.

11.

In sum, the evidence was sufficient to show that the offense was "gang-related," in that it was "committed for the benefit of, at the direction of, or in association with any criminal street gang." (§ 186.22, subd. (b)(1).)

**B.      Specific Intent Prong**

" ' "By its plain language, [section 186.22, subdivision (b)(1)] requires a showing of specific intent to promote, further, or assist in '*any* criminal conduct by gang members' . . . ." ' " (*Albillar*, *supra*, 51 Cal.4th at p. 66.)  " 'There is no statutory requirement that . . . the evidence establish specific crimes the defendant intended to assist his fellow gang members in committing.' " (*Ibid*.; see *People v. Vazquez* (2009) 178 Cal.App.4th 347, 353-354.)  Rather, "if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the [factfinder] may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar*, at p. 68; accord, *People v. Livingston* (2012) 53 Cal.4th 1145, 1171.)  " '[I]ntent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense.' " (*People v. Rios* (2013) 222 Cal.App.4th 542, 567-568.)

Here, there was substantial evidence, in the form of the victim's testimony, that minor committed the alleged offense with Hernandez.  Although Hernandez may have denied being a gang member in an interview with law enforcement, the record reflects that he informed the victim that he was "Arvina" and was on a mission, before telling minor to get the victim out of the car.  Thus, the record contains substantial evidence that minor committed the offense of attempted carjacking with a known gang member, permitting the jury to infer that minor had the requisite specific intent to promote, further, or assist criminal conduct by that gang member. (See *Albillar*, *supra*, 51 Cal.4th at p. 68.)

That minor was seen with Hernandez only a few days after the crime, and was seemingly carrying the firearm used in the offense, further supports a finding that he

intended to assist in criminal conduct by a gang member when he committed the offenses. Certainly, minor's continued association with Hernandez after the offense undermines any claim that he obeyed Hernandez's directives out of fear or similar motives, rather than with a specific intent to aid him.

Substantial evidence supports the juvenile court's finding that minor had the specific intent to promote, further, or assist in any criminal conduct by gang members, as required to support the gang enhancement.

## III. Substantial Evidence of a Pattern of Criminal Gang Activity

Minor contends the evidence is insufficient to establish a pattern of criminal gang activity, as required to support the enhancement under section 186.22, subdivision (b)(1). He specifically challenges the evidence of case No. 2016-30175.

"A gang engages in a 'pattern of criminal gang activity' when its members participate in 'two or more' statutorily enumerated criminal offenses (the so-called 'predicate offenses') that are committed within a certain time frame and 'on separate occasions, or by two or more persons.' ([§ 186.22], subd. (e).)" (*People v. Zermeno* (1999) 21 Cal.4th 927, 930.) The list of qualifying offenses is found in section 186.22, subdivision (e)(1)-(33). Expert testimony is regularly used to establish this element of a gang allegation. (See *People v. Hill* (2011) 191 Cal.App.4th 1104, 1120 (*Hill*).) Where such testimony has a reliable foundation, it is sufficient to establish elements of the gang enhancement. (See *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1330 (*Martinez*); *People v. Duran* (2002) 97 Cal.App.4th 1448, 1465 (*Duran*).)

Fernandez testified that, in case No. 2016-30175, a loaded, operable firearm was found inside a vehicle occupied by four individuals. One of the individuals was an admitted Arvina Poor Side gang member and eventually pled to being an accessory to a felony (§ 32). However, being an accessory to a felony is not a statutorily enumerated offense that could form part of a pattern of criminal gang activity. (§ 186.22, subd. (e); *People v. Gardeley* (1996) 14 Cal.4th 605, 624, disapproved on another ground in *People*

13.

*v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13.) Another individual in the vehicle pled to being a felon in possession (§ 29800), which *does* constitute a statutorily enumerated offense that can form part of a pattern of criminal gang activity. (§ 186.22, subd. (e)(31).) However, that individual denied gang membership. Another individual who pled to being an accessory to a felony likewise denied gang membership.

Fernandez opined that all the individuals in the vehicle were active Arvina Poor Side gang members. This opinion was based on his review of police reports, and on his interviews with the suspects.[7] Fernandez likewise opined that the crimes were committed in furtherance of the Arvina Poor Side gang because, in his experience, gang members carry weapons for offensive, defensive, and reputational purposes. Fernandez discussed in detail his background experience with local gangs, including the Arvina Poor Side gang, and drew on that experience in forming his opinion.

Although Fernandez gave sparse detail regarding why he believed the offenders in this case were Arvina Poor Side gang members, we cannot say his opinion was without a reliable foundation. (*Hill*, *supra*, 191 Cal.App.4th at pp. 1120-1121; *Martinez*, *supra*, 158 Cal.App.4th at p. 1330; *Duran*, *supra*, 97 Cal.App.4th at p. 1465.) A rational trier of fact could rely on Fernandez's opinion testimony to conclude that case No. 2016-30175 involved a qualifying predicate offense, and that the person who committed the predicate offense was a member of the Arvina Poor Side gang.

Minor does not challenge the evidence that Arvina Poor Side gang members committed qualifying predicate offenses in case No. 15-00026035. Combined with the evidence of the qualifying offense in case No. 2016-30175, the evidence is sufficient to establish that Arvina Poor Side is engaged in a pattern of criminal gang activity and

---

**7**      Minor contends Fernandez did not interview these suspects. However, Fernandez testified that he did.

14.

therefore constitutes a criminal street gang as required to support the enhancement under section 186.22, subdivision (b)(1).  (See § 186.22, subd. (e).)

## **DISPOSITION**

The juvenile court's disposition order is affirmed.