Filed 4/12/22  P. v. Guillen CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STEVEN GUILLEN,<br><br>Defendant and Appellant. | F079524<br><br>(Super. Ct. No. VCF361107)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Gary L. Paden, Judge.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Gerald Engler, Deputy Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Peña, J. and Meehan, J.

Following a jury trial, defendant Steven Guillen, was found guilty of attempted voluntary manslaughter. The same jury also found true allegations he committed the crime to benefit a street gang, caused great bodily injury, and personally used a deadly weapon. In his appeal, defendant initially challenged the evidence supporting the conclusion the crime was committed for the benefit of a street gang. Defendant also challenged the use of a prior prison term enhancement and various fines and fees imposed by the court. Due to recent legislative changes, defendant now contends he is entitled to a new trial on the street gang enhancement and a new sentence. The Attorney General agrees these changes require defendant be retried and resentenced, and we agree. We, therefore, vacate the sentence imposed and remand for further proceedings.

## PROCEDURAL SUMMARY

In an information filed on June 8, 2018, defendant was charged with attempted murder (count 1; Pen. Code,[1] §§ 664, 187, subd. (a)). The information also included several special allegations (the crime benefitted a street gang (§ 186.22, subd. (b)(1)(C)), gang related/potential life sentence (§ 186.22, subd. (b)(5)), defendant caused great bodily injury (§ 12022.7, subd. (a)), used a deadly weapon (§ 12022, subd. (b)(1)), suffered two prior "strike" convictions (§§ 1170.12, subds. (a)–(i), 667, subds. (b)–(i)), suffered a prior serious felony conviction (§ 667, subd. (a)(1)), and suffered a prior prison term (§ 667.5, subd. (b)).

On May 28, 2019, the jury found defendant not guilty of attempted murder, but guilty of the lesser included offense of attempted voluntary manslaughter (§ 192). The jury also found true the street gang allegation, as well as the allegations defendant caused great bodily injury and used a deadly weapon. Following a bifurcated proceeding, the

---

[1]     Unless otherwise specified, all further statutory references will be to the Penal Code.

trial court found defendant suffered two prior strike convictions, two prior serious felony convictions, and served one prior prison term.

On June 25, 2019, after striking one prior "strike" offense and a prior serious felony conviction, the trial court sentenced defendant to an aggregate term of 30 years in state prison, as follows: 11 years for attempted voluntary manslaughter, one-half the upper term doubled under the "Three Strikes Law"; 10 years consecutive for the gang enhancement; three years consecutive for the great bodily injury enhancement; one year consecutive for the use of a deadly weapon; and an additional five years consecutive for the prior serious felony conviction. An additional enhancement for a prior prison term was imposed and stayed. Various fines and court fees were also imposed.

## FACTUAL SUMMARY

Because this appeal does not challenge the jury's findings on attempted manslaughter, or two of the enhancements the jury found true, this summary will focus on the facts addressing whether the crime was committed for the benefit of a street gang.

On January 13, 2018, after several days of using methamphetamines and marijuana, A.S. spent the day sleeping on a couch in an apartment in Visalia. Around 6:00 p.m., A.S. was awakened when a group entered the apartment. After A.S. commented everyone should be quiet, defendant, who was part of the group, told A.S. not to disrespect him, and that, "this is the Northern Rider gang. They call me Lifer for a reason." Defendant then proceeded to stab A.S. approximately three or four times.

G.T., who was part of the group that entered the apartment, testified he was aware defendant was a member of the Northern Rider gang, and that he was known as "Lifer." G.T. admitted during his testimony he was hesitant to testify about the confrontation because one day earlier defendant's brother called him a "snitch" while in the hallway of the courthouse, putting him in danger with the gang.

Additional evidence was introduced to support the allegation the attack on A.S. was done to benefit a criminal street gang. In 2014, Kevin Renard was a correctional

deputy at a Tulare County pretrial facility. On July 7, 2014, while conducting a routine check of jail cells, Renard noticed defendant with blood splattered on his face. Defendant and A.S. shared a cell at this facility at that time.[2] Renard testified he understood the altercation between defendant and A.S. was about the cleanliness of their cell, which A.S. testified is a rule the Norteño gang enforces. Apparently, the altercation started after A.S. told defendant to clean up the cell. A.S. admitted in his testimony that he and defendant did not get along.

Michael Lombardo, an officer with the Visalia Police Department, offered testimony as a gang expert. Lombardo testified the Northern Riders was originally a subset of the Nuestra Familia gang, that eventually broke away because of their desire not to be obligated to pay "taxes"[3] to the larger gang and abide by their rules. Northern Riders is considered a "drop-out" gang that recruits mostly individuals who no longer want to be part of Nuestra Familia, or other highly structured gangs. Lombardo testified the Northern Riders have no specific territory. They are not considered a subset of any other gang and have no subsets within their own gang. They consider the entirety of California their territory.

Responding to a question about the types of criminal activity Northern Riders engage in, Lombardo testified their primary crimes involve identity theft, gun possession, weapon possession, assault, and narcotics possession for sale. Lombardo then testified about three different "predicate" crimes committed by Northern Riders in various parts of California in 2015 and 2016. The first crime Lombardo mentioned was an assault committed by a Northern Rider in 2016 in Santa Rosa County. The second crime involved the unlawful possession of a firearm by a felon, committed by another Northern

---

**2**     During his testimony, A.S. stated he once shared a cell with defendant while they were both active members of the Norteño gang. There is no confirmation in the record that defendant was ever a formal party of the Norteño gang.

**3**     Defined as a portion of proceeds from criminal activity.

4.

Rider in Tulare County in 2015. The third crime discussed by Lombardo involved an attempted murder by yet another Northern Rider committed in Tulare County in 2016. Lombardo testified these crimes were consistent with the list of primary crimes usually committed by Northern Riders's gang members, and that each crime was committed by an active Northern Riders gang member.

Lombardo also explained how he concluded defendant was a member of Northern Riders. His testimony addressed defendant's tattoo, nickname, and his possession of paperwork related to the gang. Lombardo earlier testified that many Northern Riders have an upside down Playboy bunny tattoo with a star that appears to be cracked or falling. Defendant had such a tattoo. Lombardo also cited the fact defendant admitted membership in the Northern Riders while in a correctional facility.

The testimony then turned to the question of whether the crime committed by defendant "benefit[ted]" the Northern Riders gang. Lombardo offered the following testimony on this question:

> "This is Northern Rider gang. By yelling that, he's telling everybody [i]n earshot why he's doing that, who he's doing it for, to demand respect for himself and the gang. [¶] … [¶] It instills fear not only to the public, but other gang members specifically, like the Nortenos."

Lombardo explained this type of statement benefits the gang because it serves as a warning not to provide testimony against the gang member, and further bolsters the reputation of the gang member.

**The Defense**

Defendant chose to testify on his own behalf. Defendant denied being a current member of the Northern Riders. He also explained that his tattoo of a Playboy bunny was acquired while he was in prison as a favor to a friend who was learning how to create tattoos. Defendant also denied identifying himself as a Northern Rider that night in the apartment, and claimed A.S. tried to rob him, which led to the confrontation.

5.

The defense provided its own expert on gangs, Daniel Longoria, a former gang member. Longoria testified that drop-out groups, like the Northern Riders, should not be considered gangs. Longoria explained this type of group did not have the hierarchy and structure needed to be considered a gang. Members of the Northern Riders would also not commit crimes for the benefit of the group, but only for their own benefit.

Longoria did not believe defendant was an active member of the Northern Riders at the time of the incident in this case. Longoria also rejected the idea that the three crimes the prosecution presented as "predicate" crimes had any connection to defendant. The defendants in those cases did not know defendant, and the defendants in those cases were not charged with street gang enhancements.

## DISCUSSION

Again, defendant originally claimed the evidence did not support the jury's finding on the street gang allegation, violating his federal and state constitutional rights. Alternatively, defendant argued both the trial court and his trial counsel erred by not providing or seeking a more detailed instruction to the jury on the street gang allegation. With respect to his sentence, defendant challenged the imposition (though stayed) of an enhancement for serving a prior prison term because of recent legislative changes, and further challenged the imposition of various fines and fees because no finding was made on his ability to pay.

Recent legislative changes have rendered most, if not all of these claims moot.

## I.     Assembly Bill No. 333 - Criminal Street Gang Enhancement

While this appeal was pending, Assembly Bill No. 333 (2021−2022 Reg. Sess.), (Assembly Bill 333) was enacted amending section 186.22. This amendment increased the threshold for establishing a crime was committed for the benefit of a "criminal street gang." (See *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 822−823.) For instance, the prosecution must now provide evidence that the "benefit" to the gang goes beyond

6.

merely protecting or enhancing the reputation of the street gang. (§ 186.22, subd. (g).) (Stats. 2021, ch. 699, §§ 1–5, eff. Jan. 1, 2022.)

Because defendant's judgment was not final on January 1, 2022, when these changes went into effect, defendant will receive the benefit of any changes that have the potential of reducing his punishment.

> "[A]bsent evidence to the contrary, [we presume] the Legislature intended amendments to statutes that reduce punishment for a particular crime to apply to all whose judgments are not yet final on the amendments' operative date. [Citations.] This principle also applies when an enhancement has been amended to redefine to an appellant's benefit the conduct subject to the enhancement." (*People v. Lopez* (2021) 73 Cal.App.5th 327, 344, citing *In re Estrada* (1965) 63 Cal.2d 740, 744–746.)

While we conclude the gang-related enhancement must be vacated, we also believe this matter must be remanded to the trial court, providing the prosecution the opportunity to decide whether to retry defendant under the newly amended version of section 186.22.

## A. Substantial Evidence Supported the Criminal Street Gang Enhancement at the Time of Trial

While double jeopardy forbids retrial after a reversal due to insufficient evidence supporting the verdict, double jeopardy is not implicated when the prosecution makes its case under the law as it existed at the time of trial. (*In re D.N.* (2018) 19 Cal.App.5th 898, 902.) However, where "evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence." (*People v. Figueroa* (1993) 20 Cal.App.4th 65, 72.) As explained below, the prosecutor provided sufficient evidence to support the criminal street gang enhancement based upon the law as it stood at the time of defendant's trial.

### 1. Applicable Law

When defendant was tried, the prosecution was required to show that the relevant crime was committed " 'for the benefit of, at the direction of, or in association with' " a

criminal street gang. (*People v. Gardeley* (1996) 14 Cal.4th 605, 609–610.) When focusing on the specific street gang the defendant was trying to benefit, the prosecution had to also show the gang previously committed primary offenses or predicate offenses, that were consistent with the offense the defendant committed. (*People v. Prunty* (2015) 62 Cal.4th 59, 81.) A gang committed these primary activities or predicate offenses when its members participated in two or more of the criminal offenses listed in section 186.22, "within a certain time frame and 'on separate occasions, or by two or more persons.' " (*People v. Zermeno* (1999) 21 Cal.4th 927, 930.) The gang or "group" requirement had to be satisfied with evidence showing more than three people shared a "common name or common identifying sign or symbol." (§ 186.22, subd. (f).) Moreover, the prosecution's evidence had to allow a jury to infer that the group the defendant sought to benefit, and the group the prosecution sought to prove existed, "are one and the same." (*Prunty*, *supra*, at p. 75.) Expert opinion testimony on whether a particular act of criminal conduct benefited a gang was not only permissible but could support a gang enhancement. (*People v. Franklin* (2016) 248 Cal.App.4th 938, 948–949.)

When considering whether a conviction is supported by the evidence, this court must review the entire record to determine whether any rational trier of fact could find support for the essential elements of the crime beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) The evidence must be "reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Ibid*.) Therefore, this court must review the evidence in a manner that favors the prosecution. (*People v. Wahidi* (2013) 222 Cal.App.4th 802, 806–807, citing *Zamudio*, at p. 357.) We look for substantial evidence, we do not consider conflicts in the evidence or weigh the strength of that evidence. (*Wahidi*, at p. 806.) A reversal based on insufficient evidence is not warranted unless there is no basis for concluding sufficient substantial evidence supports the jury's verdict. (*Ibid*.)

## 2. Analysis

The evidence presented at trial supports the conclusion defendant was a member of the Northern Riders, as the law stood at the time. Eyewitness testimony recounted how defendant announced his connection to the Northern Riders before stabbing A.S. The prosecution's expert, Lombardo, also offered his opinion, based on his experience and knowledge about various northern California gangs, that defendant was a member of the Northern Riders.

On the issue of whether the crime was committed to benefit the Northern Riders, Lombardo testified when defendant told everyone he is "Northern Rider[s]," just before attacking A.S., "he's telling everybody [i]n earshot why he's doing that, who he's doing it for, to demand respect for himself and the gang." According to Lombardo, these statements are made to instill fear in the public and potentially to any witness who might consider testifying against gang members in the future. Such statements might also bolster the respect an individual might have within the gang.[4] There is also evidence defendant may have considered A.S. a rival gang member based on their interaction while sharing a jail cell in 2014. Testimony from Lombardo suggested attacking a rival gang member was good for the gang as well as the individual who was the aggressor in the attack.

Lombardo also explained the organizational structure of the Northern Riders. Specifically, the group had a structure that was different from other northern California gangs, because it incorporated mentoring potential members and requiring a unanimous

---

[4]    Amendments to section 186.22, subdivision (g), now require that a "benefit" be more than reputational. The evidence supporting "benefit" should now address "retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."

vote for membership. Lombardo did not believe there were any subsets or cliques within the gang, and all those who considered themselves members of the Northern Riders throughout California, were members of the same gang. This was important because the evidence offered to establish the existence of predicate offenses committed by a member of the Northern Riders were committed by members of the same group and not by any subsets or cliques, even though those crimes were committed in different cities or regions.[5]

Lombardo also testified that members of the Northern Riders often had tattoos that looked like an upside down Playboy bunny with a star. The star often had cracks or appeared to be falling. This was apparently in reference to their break away from the Norteño gang and its members who used similar stars in their tattoos. During his own testimony, defendant admitted having a tattoo of a Playboy bunny with a star.

Again, we presume every fact supporting what the trier of fact could reasonably deduce from the evidence. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) Reversal of a judgment is not warranted simply because the circumstances might also reasonably lead to a contrary finding. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) "A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*Ibid*.)

Based on the version of section 186.22 that existed at the time defendant was convicted, this evidence met the substantial evidence test. Because substantial evidence supported the jury's finding on this enhancement at the time of trial, the prosecution is not prohibited from retrying this portion of the case using the newly amended version of section 186.22.

## II.    Senate Bill No. 136 - Prior Prison Term Enhancement

---

[5]    "The evidence that these gang members individually engaged in a pattern of criminal gang activity was sufficient at the time of trial to meet the requirements of section 186.22 .…" (*People v. Lopez*, *supra*, 73 Cal.App.5th at pp. 344−345.)

While this appeal was pending, Senate Bill No. 136 (2019−2020 Reg. Sess.) (Senate Bill 136), was enacted amending section 667.5, subdivision (b) to limit prior prison term enhancements to prior terms that were served for a sexually violent offense, as defined by Welfare and Institutions Code section 6600, subdivision (b). (§ 667.5, subd. (b).) (Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.) Defendant contends Senate Bill 136 applies retroactively to him and requires that the enhancement for a prior prison term be stricken. Again, the People concede, and we agree.

The trial court found defendant had been convicted of a robbery in March 2015. The court imposed, then stayed, a one-year enhancement under section 667.5, subdivision (b), as it existed at the time of sentencing. This prior conviction can no longer be used to enhance defendant's sentence when he is resentenced in this case. (See *People v. Gastelum* (2020) 45 Cal.App.5th 757, 772.)

## III. Defendant's Ability to Pay Fines

Because this matter must be remanded under the full resentencing rule (*People v. Buycks* (2018) 5 Cal.5th 857, 893), defendant's challenge to the fines and fees imposed, advanced pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 and related cases, is moot. We will, thus, not consider those claims here.

## DISPOSITION

Defendant's sentence is vacated, and this case is remanded for resentencing. The prosecution may elect to retry the section 186.22 gang enhancement, following changes made by Assembly Bill 333. When defendant is resentenced, the trial court can no longer rely on a prior prison term to enhance the sentence if it does not involve a sexually violent offense, as is now required by section 667.5, subdivision (b), as amended by Senate Bill 136. Following resentencing, the court shall forward an amended abstract of judgment to the appropriate entities. In all other respects, defendant's judgment is affirmed.